## GEORGE DAVIS v. JOHN W. GETCHELL.

### [FILED SEPTEMBER 16, 1891.]

1. **Sale**: BADGE OF FRAUD: AN INSTRUCTION, requested, by which the jury were told that if they should find from the evidence that at the time the stock of goods in controversy was sold by T. K. H. to this plaintiff, said stock was sold for a sum much less than the real value of the same, such fact, if it be a fact, would be a *strong* badge of fraud, *held*, rightly refused.

2. **Instructions** given considered, and *held*, rightly given.

3. **An assignment of error** in a petition in error in the follow-lowing language: "Errors of law occurring during the trial in the admission and rejection of evidence which will more fully appear by reference to the bill of exceptions filed herewith," criticised and disapproved.

4. **An offer of evidence** not containing sufficient to show its materiality to any one of the issues or points in controversy in the suit, but containing substantive matter irrelevant and inapplicable to any of such issues or points in controversy, *held*, properly rejected.

5. **Evidence** *held* to sustain the verdict and judgment.

ERROR to the district court for Madison county. Tried below before POWERS, J.

*D. A. Holmes*, for plaintiff in error, cited: *Bollman v. Lucas*, 22 Neb., 812; *Weber v. Rothchild*, 15 Pac. Rep. [Ore.], 652; *Redhead v. Pratt*, 33 N. W. Rep. [Ia.], 382; *Wing v. Miller*, 20 Pac. Rep. [Kan.], 120; *Blum v. Simpson*, 9 S. W. Rep. [Tex.], 662.

*Allen, Robinson & Reed*, contra, cited : *State v. Arthur*, 23 Ia., 430, 432 ; *Dyer v. Taylor*, 7 S.W. Rep. [Ark.], 260.

COBB, CH. J.

George Davis, the plaintiff in error, was the sheriff of Madison county. J. W. Getchell, defendant in error, is a

merchant of Neligh.   Thomas K. Hansen was the owner of a small stock of goods at Burnett.   On the 7th day of July, 1887, J. W. Getchell purchased the said stock of goods from Hansen, and took possession thereof.   A few days thereafter several writs of attachment against Hansen were sworn out, issued by the clerk of the district court of Madison county, and placed in the hands of George Davis as sheriff, who thereupon levied on the said stock of goods by virtue of said writs of attachment.   And on the 14th day of July of said year this action of replevin was commenced by Getchell against Davis, as sheriff, and the whole of said goods replevied.   The petition in replevin is in the usual form, and the answer is a general denial.

There was a trial to a jury, with a verdict for the plaintiff, with nominal damages.   The cause is brought to this court on error, with six assignments of error.

1. That the court erred in refusing to give the instructions to the jury asked for by defendant.

2. In giving instructions numbered 1 and 2 asked for by plaintiff.

3. In giving instructions numbered 3 and 6 on its own motion.

4. That the court erred in the rejection of evidence pointed out in the bill of exceptions.

5. That the verdict and judgment are contrary to law.

6. The verdict and judgment are contrary to the weight of the evidence.

Upon the trial the plaintiff, being called as a witness in his own behalf, testified to his ownership of the said goods, and that the same were in his possession when seized and levied upon by the defendant; that he resided in Neligh, where he had been engaged in the mercantile trade for the last fourteen years.   Upon his cross-examination by defendant he testified that he bought and paid for the said stock of goods; that part of them he bought from Thomas

K. Hansen and part from different wholesale dealers; that
about half of it he bought from Hansen; that he paid
him therefor about $400, which he gave a check for; and
made said purchase, he thinks, on the 7th day of July
about 4 or 5 o'clock in the afternoon; that said pur-
chase was made in the Diltz store building at Burnett;
that he first saw Mr. Hansen on that day at Neligh; that
it was in the forenoon when he had a conversation with
him about buying the stock; that that was the first con-
versation he had with Hansen about buying the stock;
that Hansen first asked him whether he thought of putting
in a stock at Burnett; that plaintiff told Hansen that he
had thought some of going there if he could get a build-
ing, and Hansen asked plaintiff if he could not sell him
his stock; that plaintiff replied that he didn't want to buy
any broken stock; Hansen then wanted to know if plaint-
iff wouldn't come down and look it over, and plaintiff said
that he would; Hansen asked "If I would come down
that day and look it over," and plaintiff said that he
would if trade was not too brisk, "and that I would know
by 10 or 12 o'clock;" that plaintiff went down to Burnett
that afternoon, it being about eleven or twelve miles dis-
tant; that he got down there and made the trade with
Hansen about 4 o'clock, might have been later, possibly 6
o'clock; plaintiff paid Hansen $440 for the stock, $400 in
a check, and Hansen was indebted to him about $40 for
goods; the check was on the Oakdale bank; that the
plaintiff told his men to invoice the stock after he bought
it; thinks his men commenced invoicing the next day;
that plaintiff was down there while they were invoicing;
don't think they ever completed it. To the question, "You
made no inquiry as to the amount of Hansen's indebted-
ness at that time?" he answered, "I think not, only from
him." To the question, "What did he tell you at that
time as to the amount of his indebtedness?" he answered,
"I think that he said he owed Meyer & Schurman $200 or

$300 ;" that he didn't tell him that he owed any one else. Thinks that he asked Mr. Meminger whether there was any incumbrances against the place, and that he replied that there was not; cannot say whether he told him of any indebtedness or not; that Mr. Meminger did not tell him that he had some sight drafts for collection against Hansen; that he don't remember whether it was before or after the consummation of the trade that he had this conversation with Mr. Meminger. To the question, "You knew that he was indebted to a considerable extent before you bought the goods, did you not?" he answered, "No, sir, I did not." To the question, "Did you not tell Mr. Meminger just about the time that that sale was completed, either immediately before or immediately after, on the same day, that so far as his creditors were concerned you had nothing to do with them; that you had bought the stock, and you had nothing to do with them?" he answered, "I have no recollection of any such conversation;" that he was pretty positive that he did not, but he might have made it afterwards.

The defendant called as a witness in his behalf Thomas K. Hansen, who testified that he resides at Burnett; was formerly engaged in the mercantile business there; that he is the Hansen who sold out to Mr. Getchell in July, 1887; remembers the date of the sale; thinks it was on the 7th day of July. To the question how he came to make the sale, and the circumstances with reference to that sale, he answered, "I received a letter from Meyer & Schurman three or four days before I went to Neligh, for me to come down there and take my books along with me to make a settlement. Their man, Mauritius, was there a day or two before and I told him I would not go; I had given him $200, all the money that I had, and he talked about taking a mortgage on a piece of land that I had, but I could not give a mortgage for it was a timber claim; I thought if I could sell out I could pay all my indebtedness.

I had my timber claim, house and lot, two horses and a
buggy and two cows, and I had about $1,000 book ac-
counts, and I thought that I could straighten it all out
by selling out. I did not want to have any trouble, a
general bust up or anything of the kind, and I understood
that Mr. Getchell was going to put in a branch store at
Burnett; he says that he was thinking some of doing so, and
I says, "Come up and I will sell out my stock to you." I
says I would like him to look at the stock, or something
like that; I says, "If you will come up I would like you
to look over the stock," and I think it was about 1 or 2
o'clock; he came up a short time after that, he made me an
offer and I took it. The witness did not make him any offer
up there at Neligh. To the question, "Did you not first ask
him $1,000 for that stock?" he answered, "I guess not. I
might have asked him $1,000 for it, but I didn't think he
was foolish enough to give that amount for it." That he
didn't tell Getchell that he was anxious to sell out; that
witness's indebtedness to Meyer & Schurman was about
$400; that at the time witness was burned out he owed
them about $900 and had paid them $700; that was some
months before; witness had bought other goods of them and
paid them about $200 every month since that. To the
question, "Did you not tell Mr. Getchell anything about it,
how much you owed them?" he answered, "I do not re-
member?" To the question, "Did you tell him how
much you owed Turner & Jay?" he answered that he did
not. To the question, "Did you tell him how much you
owed Jandt & Tompkins?" he answered, "No, sir; I did
not owe them anything." To the question, "Did you tell
him that you owed any other house?" he answered, "No,
sir, I don't believe that he asked me." Didn't ask him
anything about it. To the question "How much did he
pay you for the stock of goods?" he answered, "$400; and
I had got a suit of clothes and a little more—well, it was
about $445 or $450." To the question, "How long had

it been since your fire," he answered, "The fire was on the
7th day of January and the sale was on the 7th day of
July." To the several questions put by counsel for the
defendant, he stated, substantially, that about the time he
was burnt out he kept dry goods, but did not keep them
in the store after the fire but allowed the stock to run down
gradually; that there might have been a piece or two of
dry goods in the store; that he had some boots and shoes
in stock and some hats and caps; thinks he bought a few
hats and caps after the fire, "and a little boots and shoes
during the summer;" that he didn't invoice the stock be-
fore he sold it to Mr. Getchell; that he knew pretty well
about it; had not invoiced since he was burnt out. To
the question, "How much did you call your stock worth?"
he answered, "Well, that depends; a stock like that, in
that condition, I could buy any day for $350." To the
question being repeated, "Well, it would not have fetched
more than $400 or $500 at auction. There was a lot of
cheap stuff that you could hardly give away at all—over-
alls and that sort of thing;" that there was not many
jeans and pants and overalls, but how many he could not
tell, but finally concluded that there were about eighty
pairs; that they were worth about sixty cents, perhaps
seventy cents; that he had some boots and shoes and a few
notions; that he had some hats that he would sell for fif-
teen cents apiece; they cost me sixty-five cents; would
have been glad to have got fifteen cents for them; did not
think there was fifty of them, not over twenty-five; that
he was pretty low on boots and shoes, thinks about fifty
pairs, counting children's shoes; that the groceries were
damaged and the glassware also; probably about $12
worth of glassware; that he had some canned goods
which had been injured by the fire, didn't know how
much; had pretty near all of it left; not more than $50
worth; that he put that glass on the edge to show up; did
not care what they was just so they showed; he learned

that in the old country, you know you don't do it out here; that after the sale he went down to see his wife; she had a note against him for over $300, and he paid it and told her all about it; then went and bought some property in her name in Platte Center; that he concluded the sale with Mr. Getchell about dusk, about supper time; that he took a team, drove to Norfolk that night and got his check cashed there, too, and then went to Platte Center and bought some property; his check was on the Oakdale Bank there.

J. H. Kierstead was sworn and examined as a witness on the part of the defendant. Stated that he resides in. Burnett, Madison county; is in the mercantile business; has been so engaged at Burnett for five years; was acquainted with Mr. Hansen while he was engaged in business there; was not much acquainted with his stock of goods except in the way of appraiser at the time of the levying of the attachment; witness assisted in the appraisement, had not been in the store for four or five weeks before that time; is acquainted with the market value of goods; thinks that the stock of goods was worth in the neighborhood of $1,200 to $1,300; was not very much acquainted with the business of Mr. Hansen at the time of the sale. Counsel for the defendant put the following question to the witness: Q. Were you familiar with his (Hansen's) personal habits prior to the time of this sale? which question was objected to by the plaintiff, as incompetent, irrelevant, and immaterial, which objection was sustained by the court. Thereupon counsel for the defendant made the following offer: "Now at this time the defendant offers to prove by the witness now upon the stand that for some months prior to the sale to Getchell by Hansen that Hansen had been very much dissipated, and that it was a matter of general repute in the village of Burnett that his business was in a bad condition financially, and that he was on the verge of failure and bankruptcy;" to which the

plaintiff objected, as incompetent, irrelevant, and immaterial, and not the proper mode of offering to prove a fact, which objection was sustained by the court. Thereupon the counsel for defendant put the following question: "Q. You may state if you were familiar with the personal and business habits of Mr. Hansen, and the condition of his business, etc., during the time immediately preceding the time of this sale;" which question was objected to by the plaintiff, as incompetent, irrelevant, and immaterial, which objection was sustained by the court. And the following: "You may state, if you know, what the general understanding was among the business men of Burnett, what it was with reference to the financial condition of his business;" which question was objected to by the plaintiff, as incompetent, irrelevant, and immaterial; and further, because it has not been shown that it was ever brought to the knowledge of the plaintiff herein; which objection was sustained by the court. And the following: "Q. You may state if you had any personal and positive knowledge of his financial condition;" which question was objected to by the plaintiff, as incompetent, irrelevant, and immaterial; further, because it has not been shown that the same ever came to the knowledge of the plaintiff; which objection was overruled by the court, and witness answered: "I do not know that I had; I had some knowledge of his transactions with Meyer & Schurman by correspondence." Plaintiff moved the court to strike out the last part of the last answer, which was as follows: "I had some knowledge of his transactions with Meyer & Schurman by correspondence," for the reason that the same is incompetent, irrelevant, and immaterial, hearsay, and not responsive to the question, which motion was sustained by the court. To the following question: "Were you acquainted with his general reputation in the village at that time as to his general financial condition?" which question was objected to by the plaintiff as incompetent, irrelevant,

and immaterial; further, because it has not been shown that the same has ever came to the knowledge of the plaintiff herein, which objection was sustained by the court.

The defendant then offered the appraisal of the said goods made at the time of the levy of the attachment, which was received over the objection of the plaintiff and appears in the record. The aggregate value of the goods is not footed up upon the said sheets of appraisal.

J. W. Fetter was sworn and examined on the part of the defendant. Stated that his residence is in Norfolk, that he was a clerk by trade; was acquainted with Thomas K. Hansen; that he formerly lived in Burnett; that he was clerking there for about a year; clerked there first in 1885; afterwards worked there in 1886 and 1887; knows the time that Mr. Hansen sold out to Mr. Getchell; had been clerking for him about that time; was there on the same day that the sale was made to Mr. Getchell; Mr. Getchell remained there at the store for about a couple of hours; witness did not hear the conversation between them; heard Mr. Hansen say that he wanted $100 more, but did not know the amount or anything about it; was somewhat acquainted with Mr. Hansen's business at that time; was somewhat familiar with the value of that class of goods; don't think he exactly knows the value of them; did not invoice them; was acquainted with the value of some of the different classes of goods that were in there; had been handling them during the time that witness was there; cannot tell exactly how much of each kind of goods; as to the value of the entire stock, his estimate is that there is between $800 and $900; witness finally modified his answer to between $800 and $1,200. To the question, "You may state if you know what his business habits were for a few months before the time of the sale," plaintiff objected, as incompetent, irrelevant, and immaterial, which objection was sustained by the court.

J. H. Kierstead being recalled, testified, in answer to

questions put him by counsel for the defendant, that in making the appraisement of the goods levied upon they did not include all the goods in the store; that Mr. Lancaster was there in possession of the store for Mr. Getchell; that there was some unbroken packages with Mr. Getchell's name on them, and some broken packages bearing Mr. Getchell's name that they did not take down; that the packages referred to were wooden boxes; that said packages were not included in the inventory.

The defendant was also called and examined as a witness on his own behalf. Stated that he was sheriff of the county and by that title held, and none other; claimed to hold the goods attached by virtue of attachments. Witness here identified two orders of attachment which were put in evidence.

Defendant also introduced T. F. Meminger as a witness on his behalf. Testified that he is a resident of Burnett, and is county treasurer of Madison county; in July, 1887, he resided at Burnett, and was cashier of the Bank of Burnett; he was acquainted with Mr. Hansen at that time; that his place of business was in the building west of that occupied by Mr. Hansen; that he was acquainted with Hansen at the time he sold out to Getchell. To the question, "You may state if you knew of Mr. Hansen's financial condition about that time," he answered, "Why, I knew that Hansen was generally hard up all the time; he always claimed that his collections were hard to make; that is about all I know; I think we had somewheres in the neighborhood of $400 to $600 in the bank for collection against him which was due, and which had been presented to him, and he said that he could not pay; that he wanted more time; he never questioned the correctness of the amounts;" that witness saw Mr. Getchell in Burnett the day that he bought the stock; had a conversation with him that day; cannot say exactly, but somewhere in the neighborhood of 5 o'clock in the evening of the same day of the

sale. Counsel then put the following question to witness: " Q. Do you know whether the financial condition of Hansen was generally known to the business men of Burnett at that time?" which question was objected to by the plaintiff, as incompetent, irrelevant, and immaterial; further, that it has not been shown that the same ever came to the knowledge of the plaintiff herein; which objection was sustained by the court; and thereupon defendant offered to prove by the witness on the stand that it was generally known among the business men of Burnett that Hansen was in financial straits, and that his business was in a bad condition, which was objected to by the plaintiff as above, and the objection was sustained by the court.

The plaintiff being recalled and examined as a witness in his own behalf, testified that he thinks he knows the value of the stock of goods in the Hansen store at the time he purchased it, and that that value was from $400 to $450; that that would be a good price for them. To the question, " What, if anything, induced you to purchase the stock of goods?" he answered, that he wanted to get a building in order to put in a stock of goods there; that there was no other building in town that he could get suitable for it.

While but two of the instructions given by the court on its own motion are excepted to by the defendant, I copy the whole of them:

1. The plaintiff brings this action in replevin to recover from the defendant the stock of goods mentioned in the plaintiff's petition, which he alleges he was the owner and entitled to the possession of at the commencement of this action, and that defendant wrongfully detained said property from him, to his damage in the sum of $1,000.

2. The defendant in his answer denies generally the plaintiff's right to recover.

3. The burden is upon the plaintiff to show, by a preponderance of the evidence, that at the commencement of this action, he was the owner and entitled to the possession

of the goods in controversy, and that the same were at that time wrongfully detained from him by the defendant, to entitle him to recover ; or, if the plaintiff's ownership and right of possession is established in any portion of said property, he is entitled to recover for that portion.

4. The charge of fraud in the purchase and sale of the goods in controversy between the plaintiff and T. K. Hansen, it is incumbent upon the defendant to establish by a preponderance of the proof, in order to entitle him to recover therefor.

5. But such fraudulent sale may be proven by showing the existence of other facts and circumstances surrounding or connected with the transaction, tending to show a fraudulent intent on the part of the parties to such sale or conveyance, or tending to show a purpose not consistent with an honest intent; and if you believe from the evidence that the property in controversy was sold by said Hansen to the plaintiff, and if you further believe from the evidence that said Hansen intended by such sale to hinder, delay, and defraud his creditors, and that before or at the time plaintiff made such purchase he had knowledge or notice of the fraudulent purpose of said Hansen, or before or at the time of such purchase the plaintiff had knowledge of such facts and circumstances as would have aroused the suspicions of and put a reasonably prudent man upon inquiry, which inquiry, if pursued, would have led to the knowledge or notice of such fraudulent intent on the part of said Hansen, then the plaintiff is not entitled to recover.

6. You are instructed that the sale of property in good faith for a valuable consideration, when there is a delivery of the property sold, passes the title to the purchasers, and the fact that the seller was in debt will not of itself invalidate the sale, although the purchaser may have known that fact at the time of purchasing.

7. And you are instructed that, although the sale by Hansen to the plaintiff may have had the effect to hinder

and delay the creditors of said Hansen in the collection of their debts, this fact alone will not render the sale fraudulent and void.

8. In order to render the sale of the goods in controversy to plaintiff from Hansen fraudulent and void, Hansen must have made the conveyance for the purpose and with the intention of defrauding his creditors, and the plaintiff must have purchased with a like intent and purpose, or must have been in possession of facts and circumstances sufficient to put a reasonably prudent man upon inquiry, which inquiry, if pursued, would have led to knowledge or notice of such fraudulent intent on the part of said Hansen in the sale of said goods.

9. If you find that at the commencement of this action the plaintiff was the owner of and entitled to the possession of the property in controversy, then you will say so by your verdict and assess him nominal damages of one cent for the wrongful detention of the same.

10. If you should find the issues for the defendant in this case, then the measure of his damages which he will be entitled to recover is the aggregate amount of the attaching creditors' claims in the case of *Meyer & Schurman v. T. K. Hansen*, and the case of *Turner & Jay v. T. K. Hansen*, as mentioned in the several writs of attachment in said cases, introduced in evidence herein, and the sums mentioned therein as costs, however, not to exceed the value of the goods in controversy.

The following instructions were given by the court at the request of the plaintiff:

1. You are instructed that fraud is never presumed but must be proved, and that fraud will never be imputed to a transaction where the facts and circumstances upon which it is predicated may exist with honesty and purity of intention; and if you can reconcile the facts (with reference to the sale of the goods from Hansen to the plaintiff), and said facts and circumstances can be reconciled with

an honest purpose, then your verdict should be for the plaintiff.

2. The burden of proof of fraud in this case is on the defendant, and in order for defendant to establish fraud, he must show a fraudulent intent on the part of Hansen to hinder, delay, or defraud his creditors; and that plaintiff herein knew and participated in said fraud, or had knowledge of the facts that would put an ordinary prudent man on inquiry to ascertain said fraudulent intent, and if the evidence in this case fails to show facts and circumstances (or such fraudulent intent) on the part of Hansen, and that the same was participated in by plaintiff, or known to him, then in that case you should find for the plaintiff.

3. The law presumes all transactions honest and made for an honest purpose till the contrary is shown, and the burden of proof to show a dishonest purpose in this case is upon the defendant.

The following instruction asked for by the defendant was refused:

If you find from the evidence that at the time the stock of goods in controversy was sold by Thomas K. Hansen to this plaintiff, that said stock was sold for a sum much less than the real value of the same, such fact, if it be a fact, would be a strong badge of fraud, and the same would be proper for you to consider in making up your verdict.

The first assignment of error is: That the court erred in refusing to give the instructions asked for by defendant.

There is but one instruction copied in the record as having been asked for by the defendant, which was refused. Doubtless the ground of such refusal was the use by the draftsman of the word "strong," as characterizing the fraud or badge of fraud appertaining to the fact, if proved, that the said Thomas K. Hansen sold to the plaintiff the stock of goods in question, for a sum much less than the real value of the same. Reference is made to this instruction as set out at length above, and I am of the opin-

ion that its entire composition is unfortunate if not fatally
faulty.    There was evidence in the case from which the
jury might have believed that the goods were sold at a
price much below their value, and this fact with all the
other circumstances connected with the same were proper
to be considered by the jury, and it was the province of the
court, by a proper charge, to tell the jury what of these cir-
cumstances were proper for their consideration, but not to
characterize any part of such evidence as being strong or
weak.    What is evidence is a question for the court; the
degree of weight to be given, or strength to be accorded
to evidence, are questions for the jury.    Plaintiff in error
cites no case for the benefit of this court in the consideration
of this point.    The one cited by counsel for defendant in
error, *State v. Arthur*, 23 Iowa, 430, is to some extent il-
lustrative of the point and favorable to the case of counsel
citing it.    I do not think it was error in the court to re-
fuse to give the instruction in the form in which it was
presented.    This, indeed, is well nigh conceded by counsel
for plaintiff in error.    But they urge that it was error in
the court not to have modified the instruction by striking
out the word "strong," (as I suppose,) and giving it as
modified, or without originating and drafting instructions
itself covering points of law and evidence sought to be
covered by this instruction.    Where, upon the trial of a
case, no instructions whatever are presented to the court
and requested to be given in charge to the jury upon a side
of it, and it is one proper for instructions, or where in-
structions are necessary in order to enable the jury to do
justice in the case, whether it is incumbent as a duty upon
the court to give proper instructions presenting that side
to the jury, it is a question which I conceive not to be before
the court in the present case.    In this case, the cause of the
defendant was represented by well known and able coun-
sel who did present at least one instruction and prayed the
court that it be given in charge to the jury.    That being

done, while it was still the right of the court to give such instructions as it deemed proper, I do not think that its failure to present a certain view of the case, which might be deemed altogether correct and proper had it given it, can be held to be a reversible error. Yet, in the case at bar, the court gave ten instructions, as we have seen, upon its own motion, but two of which were excepted to by counsel for plaintiff in error. It is true that in none of said instructions was the attention of the jury especially drawn to the inadequacy of price at which the sale from Hansen to the plaintiff was made, as claimed by counsel, for the defendant, as a badge of fraud or as a circumstance to be considered by the jury in agreeing upon their verdict. It was only in a general way, together with other facts and circumstances which might be evidences of fraud, that the attention of the jury was called to it. That these instructions might well have gone further than they did, I can easily conceive, but that the failure of the court to make them more explicit and comprehensive is reversible error, in view of the above circumstances, I do not think; especially after counsel, who now complain, had essayed to draft an instruction in that behalf.

The second assignment of error is: That the court erred in giving the third and sixth instructions given by the court on its own motion. This point is not argued by the plaintiff in error in the brief except in connection with the point which we have already considered. From what they there say I do not understand them as objecting to anything which the court says in these instructions, but only to the consideration that it leaves out much which might have been said with propriety.

The third instruction does not purport to give the law of the case, except upon the points therein stated, to-wit: That if the plaintiff has proved by a preponderance of the evidence that at the commencement of the action he was the owner and entitled to the possession of the goods in

controversy, and that the same was wrongfully detained
from him by the defendant, the plaintiff was entitled to
recover; or rather, that unless he did prove this fact by a
preponderance of the evidence, he was not entitled to re-
cover, and again, that his right to recover was limited to
such portion of the goods as he should bring within such
evidence. I do not think this instruction open to any ob-
jection whatever.

The sixth instruction simply states the proposition that
the sale of the property was in good faith and for a valu-
able consideration, when that sale was consummated by a
delivery, passes the title to the purchaser, and that the fact
that the seller was in debt will not *of itself* invalidate the
sale, although the purchaser may have known that fact at
the time of the purchasing. It was not the intention of
the court in giving this instruction to shut out and ignore
the many facts which often arise, and some of which there
was evidence tending to prove had arisen, in this case,
which, if taken in connection with the sale and conditions
above stated, would invalidate it, but it was simply its in-
tention to state that, leaving all such considerations out of
view, the conditions stated would pass the title of the prop-
erty to the purchaser.

The brief of plaintiff makes no attack upon the instruc-
tions given at the request of the plaintiff, two of which
were excepted to by him and made the ground of the third
assignment of error. After a somewhat careful examina-
tion of the said instructions, I fail to see that they were
open to objection.

The fourth assignment of error is in the following
words: " Errors of law occurring during the trial, in the
admission and rejection of evidence, which will more fully
appear by reference to the bill of exceptions herewith
filed." This method of assigning errors is scarcely per-
missible in a petition in error. It is permissible in a
motion for a new trial, solely for the reason that such

Davis v. Getchell.

motions are usually prepared in the hurry and confusion
of the trial, or other absorbing business of the court; but
this cause does not extend to the preparation of a petition
in error.   A reviewing court is entitled to have the errors
complained of specifically pointed out, and upon it should
not be thrust the duty of searching through a bill of ex-
ceptions to find wherein the court may have erred in the
admission or rejection of evidence.   Counsel in the brief,
however, cites us to page 33 of the transcript, where we
find the following :

J. H. Kierstead being on the stand and testifying on the·
part of the defendant, the following question was put to
him by counsel for the defendant: Q. Were you famil-
iar with his (Hansen's) personal habits prior to the time
of this sale? which question was objected to by the
plaintiff, as incompetent, irrelevant, and immaterial, which
objection was sustained by the court, and thereupon coun-
sel for the defendant made an offer to prove by the witness
now upon the stand, that for some months prior to the
sale to Getchell by Hansen, Hansen had been very much
dissipated, and it was a matter of general repute in the
village of Burnett that his business was in a bad condi-
tion financially and that he was on the verge of failure and
bankruptcy, to which offer the plaintiffs object, as in-
competent, irrelevant, and immaterial, and not the proper
mode of offering to prove a fact, which objection was sus-
tained by the court.

I understand it to be a rule governing offers of evidence
that an offer should contain within itself sufficient to show
its materiality, to at least some one of the issues or points
in controversy in the suit in which it is offered ; also, that
it should not contain substantive matter which is irrele-
vant and inapplicable to any of such issues or points in con-
troversy.   If I am not in error as to this rule, then the
offer under consideration is inimical to objections in both
of such respects.   It was certainly not admissible as evi-

dence that Hansen had been very much dissipated; and the offer lacks the important statement that Hansen was indebted and unable to pay his debts, even if such facts can be proved by common reputation.

The fifth and sixth assignments of error are: That the verdict and judgment are contrary to law, and that the verdict is contrary to the weight of evidence.

I will assume that counsel in drafting the sixth assignment intended by its language to mean that the verdict is not sustained by the evidence. As has often been said in this and other courts, the action of replevin is one in which both parties are actors. While it is incumbent upon the plaintiff to prove his cause of action and right to the property replevied, it is also incumbent upon the defendent not only to disprove the cause of action of the plaintiff, but to establish his own right to the property and its return to him. It cannot be claimed but that the evidence of the plaintiff established his purchase of the property for value and its possession by him at the time of its seizure by the plaintiff in error, and that he thus established his right to retain the property unless the plaintiff has successfully shown that the said purchase by the plaintiff was made in fraud of the creditors of Hansen. A careful examination of the evidence fails to enable me to point out, or clearly see, any respect in which the conclusion to which the jury arrived in their verdict is clearly wrong. The judgment is therefore

AFFIRMED.

THE other judges concur.