PARIS R. HIATT V. M. P. KINKAID.

FILED APRIL 17, 1894.   No. 6471.

1. **Amendment of Pleadings**: EXCEPTIONS: REVIEW.   To enable a party to present for review the alleged error of permitting to be filed or to be refiled an amended answer the record must show an exception to have been taken to the order complained of by the party alleging error in respect thereto.

2. **Defective Record for Review**: SUFFICIENCY OF EVIDENCE. The objection that the verdict is not sustained by, or is contrary to, the weight of the evidence, or that it is contrary to law, cannot be considered upon a record in which such verdict does not appear.

3. **Instructions**: ASSIGNMENTS OF ERROR: REVIEW.   An assignment in a petition in error, that the trial court erred in refusing to give a group of instructions asked, will be considered no further when it is found that the refusal of any one of such instructions was proper.

4 ———: ———: ———.   An assignment of error as to the giving en masse of certain instructions will be considered no further than to ascertain that any one of such instructions was properly given.

ERROR from the district court of Boone county.   Tried below before THOMPSON, J.

*Charles Riley* and *Paris R. Hiatt*, for plaintiff in error.

*M. P. Kinkaid, pro se.*

RYAN, C.

Of a judgment in favor of the present defendant in error the adverse party, upon error prosecuted to this court,

obtained a reversal (*Hiatt v. Kinkaid*, 28 Neb., 721), and thereupon this cause was remanded for further proceedings. Subsequently an amended answer was filed, the court reserving the right to strike the same from the files—a right which later was exercised. Soon afterward, however, the court permitted the refiling of this amended answer upon condition that the costs up to that time should be paid by the defendant. To this answer a reply was filed and the cause was continued generally. In argument, counsel for plaintiff in error complained of this, but upon what ground does not from the record very clearly appear. Certain it is, however, that no exception was taken by the complaining party; a fact which, while it leaves in doubt the natule of the complaint made, is equally effective in excusing its review in this court.

The issues upon which this case was last tried were in general terms as follows: Paris R. Hiatt, the plaintiff, alleged that the defendant M. P. Kinkaid, with the intent to injure plaintiff, and falsely, maliciously, and without any reasonable or probable cause, did charge plaintiff with the crime of larceny by a complaint filed before a justice of the peace of Holt county, Nebraska, in that, as said complaint stated, the said Paris R. Hiatt, on or about May 29, 1884, had stolen certain checks and drafts of said Kinkaid, payable to the order of Hiatt and Kinkaid, drawn by firms in Chicago, amounting to the aggregate sum of $3,627.19, and that said complaint alleged that the said drafts and checks were concealed on the person of said Hiatt. The plaintiff further alleged that said justice of the peace issued upon said complaint a warrant requiring the sheriff of Holt county aforesaid to diligently search the person of Paris R. Hiatt for said instruments and to bring his person before said justice of the peace, or some other magistrate having jurisdiction of the case presented by said information, to be dealt with according to law, and that pursuant to the mandate of said warrant the sheriff of Holt county

did search the person of said plaintiff and took therefrom the aforesaid drafts and checks, and that after said search plaintiff was required to enter into a recognizance in the penal sum of $100 for his further appearance to answer the charge made in and by said complaint; that thereafter, as required, plaintiff did so appear, and was fully acquitted and discharged of the crime alleged; that the defendant took from plaintiff's person and converted to his own use the aforesaid drafts and checks, which were the property of said plaintiff, and that by reason of the foregoing facts the plaintiff was damaged in the sum of $14,086.07, for which he prayed judgment.

The amended answer first contained a general denial of the averments of the petition, except as thereafter such denial should be qualified or admitted by the answer itself. The defendant in his amended answer thereupon averred that he filed a complaint against plaintiff and caused to be taken from plaintiff the checks described in plaintiff's petition; and further, that at that time defendant was the owner thereof and entitled to the immediate possession of the same; that in the spring of 1883 defendant employed the plaintiff as his agent to buy cattle for feeding purposes, and to take care of and fatten said cattle at plaintiff's own expense; that pursuant to said agreement plaintiff got into his possession seventy-six head of cattle, the ownership and title to which were in defendant, to so take care of, feed, and fatten, and that plaintiff, thus being the custodian of defendant's said cattle, without defendant's knowledge or permission or any authority so to do, wrongfully and fraudulently shipped to the city of Chicago, Illinois, the said cattle and there sold them, and received in payment therefor the checks described in plaintiff's petition, together with $41.12 in money, and that soon after said sale, the plaintiff being in Holt county, Nebraska, defendant ratified the sale of said cattle by plaintiff and thereby made the proceeds of the sale of said cattle his own; that there-

upon defendant demanded of plaintiff a delivery of said proceeds to him, which plaintiff refused, and that plaintiff then and there feloniously converted the proceeds to his own use and concealed the same from defendant and denied having possession of the same, and that it was to discover said checks so converted by plaintiff that defendant made and filed the complaint for a search warrant, pursuant to which plaintiff was searched and that two of said checks were found concealed upon plaintiff's person, and defendant further alleged that he filed no other complaint for the arrest of plaintiff and did not cause his arrest in any other manner than as set forth; that he had reasonable and probable grounds for making said complaint and acted without malice in so doing in said premises.

By his answer the defendant claimed compensation for the value of two missing steers with which defendant had been intrusted by plaintiff, which value, the defendant alleged, was $75. The defendant also claimed the right to recover the sum of $41.12 in cash received by plaintiff as part of the proceeds of the sale of said cattle in Chicago, and also the right to recover the value of feed furnished by him which was used in fattening the aforesaid cattle to the amount of $40. The defendant in his amended answer prayed for a judgment for the sum of $156.12, the aggregate amount of the above three items.

By his reply the plaintiff denied each allegation in the answer except as admitted, and alleged that in May, 1883, a contract was entered into by and between the plaintiff and the defendant for the purchase, care, keeping, and sale of certain cattle, which contract was evidenced by letters between the parties which were set out in the reply. The first of these letters was written by Paris R. Hiatt to the defendant, in which occurred the following language: " I am ready for business, as soon as you make out your papers authorizing me to buy as your agent, for such part of the profits as is named—all profits above thirty-five per cent—

Hiatt v. Kinkaid.

steers kept one year and sold fat." In the answer to this letter the defendant stated the terms defining the relation of the parties as follows: "My understanding now is that you buy, take care of, and fatten the cattle, pay all damages caused by cattle trespassing upon the property of others, and that I pay you for the same all profits to me over and above thirty-five per cent net profits. With this understanding you may begin to buy and check out funds to pay for the same as you buy. Return this sheet to me by return mail signifying your acceptance of these terms." In his reply the plaintiff averred that he accepted the foregoing proposition of the defendant, and in pursuance of the terms thereof bought seventy-six head of steers, and on the 1st day of October, 1883, began to feed said cattle for the purpose of fattening them; that thereafter the plaintiff kept said cattle on full feed for the period of 240 days, to-wit, until the 26th day of May, 1884, on which date plaintiff sold seventy head of the same in Chicago, obtaining therefor three several drafts. (These drafts are described at length and are those which were taken from the person of the plaintiff under the search warrant.) In the reply the plaintiff admitted that beside the drafts he obtained the sum of $41.12 in cash as part of the proceeds of the sale of the aforesaid cattle. In the reply the plaintiff further averred that he had expended for the purchase of cattle the sum of $2,445, and for feed the sum of $4,000; also for labor, keeping, and caring for said cattle he had expended a further sum of $900. In all, plaintiff alleged in his reply he had expended the sum of $7,345 in pursuance of the terms of the contract made as aforesaid. It was admitted in the reply that the defendant had furnished the plaintiff with the sum of $3,275, all of which, as plaintiff alleged, was expended by him in pursuance of the terms of the contract as aforesaid. He further alleged that he had paid to the defendant on the contract the sum of $100, and that on or about the 1st day of June, 1884, defendant took and

converted to his own use four of the steers then unsold, which were of the reasonable value of $200. It was further alleged by the plaintiff in his reply that on or about the 26th of February, 1884, one W. N. Hawkins recovered possession of one of the steers previously referred to in the reply, upon a suit in replevin, which was finally determined in favor of said Hawkins. The plaintiff averred that in respect of this suit he had incurred costs and expenses in the sum of $120. There was no prayer for relief in this reply.

The issues have been stated very fully, for the reason that the plaintiff, on the trial of the case, introduced evidence that the defendant had sold to the plaintiff the cattle which had been purchased for him and had taken the note of the plaintiff for $2,400, with thirty-five per cent added thereto, making in all, as the plaintiff claimed, the sum of $3,040. Through this alleged purchase of the cattle by the plaintiff from the defendant it was sought to be established that the absolute ownership and right of possession of the cattle, when sold in Chicago, were in the plaintiff, to the exclusion of the possession of any rights of that nature on the part of the defendant. There was no attempt to amend the pleadings after the introduction of this evidence for the purpose of making the allegations conformable to the alleged proofs in this respect, and, therefore, whether or not the plaintiff by the purchase of the property had become the owner and entitled to the possession thereof before its shipment and sale in Chicago, is rendered an irrelevant inquiry.

By the pleadings there were presented first, by the petition, a claim for malicious prosecution and false imprisonment; and, second, for the value of the property secured by means of the search warrant and alleged to have been converted by the defendant to his own use. The answer alleged facts which, if established, showed that the title and ownership of the cattle, when they were shipped to

Chicago and disposed of, were in the defendant, and that
the plaintiff had no interest therein nor in respect thereof,
except the right to receive, as his compensation for caring for
said cattle and furnishing the feed, sixty-five per cent of the
net profits when ascertained.  The title and ownership of
the property meantime were clearly in the defendant,
measured by the terms of his answer.  The defendant also
asserted a right to a counter-claim in the sum of $156.12.
While the averments of the reply are made at considerable
length, they in effect countenance the claim of the defend-
ant as to his alleged right of ownership and possession of
the cattle previous to the time of their being sold in Chi-
cago.  In the reply it was alleged, it is true, that one of
the steers had been lost in a replevin suit instituted by
Hawkins, and that two others had been taken possession
of and used by the defendant.  In respect of these three
head of cattle, however, it cannot escape observation that
there was no prayer for relief by an amendment of the pe-
tition; neither was a like attempt made by the reply which,
under the former holdings of this court, must have been
unavailing. (*Savage v. Aiken*, 21 Neb., 605; *School Dis-
trict v. Colwell*, 16 Neb., 68; *Holmes v. Hutchins*, 38 Neb.,
601.)  There was, therefore, properly presented but the
right of the plaintiff to recover $14,086.07 damages, as
prayed in his petition, and, on the part of the defendant, the
affirmative right to a counter-claim of the sum of $156.12.
In this connection it is proper to say that the assignment
in the motion for a new trial, that the verdict was not sus-
tained by the evidence, and all other matters with reference
to the verdict, must be ignored, for the record fails entirely
to show what that verdict was.  Following the recitals
as to the overruling of the motion for a new trial, the
plaintiff's exceptions, and the allowance to him of forty
days to settle bill of exceptions, there was judgment that
the defendant go home without day and recover his costs,
taxed at $422.96, and that the plaintiff recover his costs

of this term taxed at $155.88.   For the purposes of this case it may be assumed that the expression "go hence" has the same force as "go home," in respect to constituting a judgment final for the purpose of review in this court. The sum of $422.96 was probably taxed against the defendant, conditioned upon his filing his amended answer. Such costs as were taxed to the plaintiff were probably those which accrued subsequently.   The judgment itself, however, does not serve to enlighten us as to what amount of damages, if any, the jury found had been sustained by the plaintiff, nor in what sum the defendant was entitled to maintain his counter-claim.   For all that appears in the record it might well have been that the jury found that the damages sustained equaled the amount of the counter-claim asserted, and that, therefore, no verdict was rendered in plaintiff's favor.

It is a matter of but simple justice to say that the evidence has been carefully considered with a view to ascertaining whether or not a verdict should have been returned in favor of the plaintiff in error.   The testimony showed that the plaintiff in error had undertaken to feed and care for the cattle, and for his outlay of labor and money was to receive as full compensation sixty-five per cent of the net profits.   Until a sale he was but a bailee for hire.   The defendant in error furnished the money wherewith the cattle were purchased, and until they were sold they were his property.   The plaintiff had no right upon his own volition to turn these cattle into money; and when he shipped them to Chicago the evidence shows that he did so surreptitiously and without the knowledge of the defendant in error, whose information that the cattle had been shipped to Chicago was acquired when it was too late to stop them in transit. Thereupon the defendant in error did all that lay in his power to prevent the plaintiff in error securing the proceeds of the sale of the cattle, but he had received his information of their shipment too late to accomplish anything

in even that direction.    With the drafts and checks, which
were the fruits of his treachery, the plaintiff in error re-
turned to Nebraska, and in an interview with the man
whose confidence he had so shamefully abused, he refused to
do anything until his own claims were satisfied.    Even the
nature and extent of these he did not state.    The plaintiff
in error was financially irresponsible, and a personal judg-
ment against him could afford no redress.    Under these cir-
cumstances the defendant in error resorted to replevin pro-
ceedings to secure possession of the checks and drafts which
were the avails of and at that time constituted the sole
substitutes for the cattle.    When the sheriff, by virtue of
the writ of replevin, demanded of Hiatt the possession of
the checks and drafts accurately described, he denied that
he had them.    Thereupon possession was secured by search-
ing the person of Hiatt under a search warrant issued upon
an information filed by the defendant in error.    Until this
time the conduct of the defendant in error was above re-
proach.    When, however, he resorted to this measure, he
laid himself liable for such damages as the jury should find
Hiatt suffered by reason of this violation of his rights.
This question was, by the instructions, submitted fairly to
the jury.    In the absence of the verdict from the record,
we, in passing upon the evidence, cannot say but that the
counter-claim pleaded was sufficient to fully meet the de-
mands of justice in this respect.    The jury must have
found for the defendant in error as to his claim of right of
ownership and possession of the drafts and checks, for had
they found differently there must have been in the record a
judgment for about $3,000 in favor of the plaintiff in error.
If we are correct in this assumption, and we think it ad-
mits of no doubt, the conclusion of the jury was in accord-
ance with our own; that is, that the drafts and checks
rightfully belonged to the defendant in error.

This disposes of all the questions presented upon which
a review is sought, except such as arose upon the giving

and refusal to give certain instructions. In respect of these it may be remarked that the modification complained of, as to the first instruction asked by the plaintiff, has no merit, as will be seen by a statement of the instruction as asked, and as given. As asked, the instruction was as follows : " If you find that the defendant, previous to the commencement of the prosecution, believed plaintiff to be an honest man, and find that the plaintiff and defendant, just before plaintiff went out of defendant's office with the drafts in controversy, disputed as to whether or not plaintiff was entitled to the drafts, the plaintiff claiming that he was and the defendant denying it, and find that the defendant knew when he commenced the prosecution that plaintiff had taken such drafts under a claim of right, and that he took and kept them openly and not secretly in the daytime and without other suspicious circumstances, such fact would be evidence of want of probable cause." As given, the instruction was in the following language: "If you find from a preponderance of the evidence that the defendant, immediately previous to the commencement of the prosecution, believed the plaintiff to be an honest man, and find that the plaintiff and defendant, just before plaintiff went out of defendant's office with the drafts in controversy, disputed as to whether or not the plaintiff was entitled to the drafts, the plaintiff claiming that he was and the defendant denying it, and find that the defendant knew when he commenced the prosecution that plaintiff had taken said drafts under a claim of right, and that he took and kept them openly and not secretly in the day-time and without other suspicious circumstances, such fact would be some evidence of want of probable cause." It requires very close scrutiny to locate the modifications as made of the instruction asked by the plaintiff. When located, however, they will be found simply to require that the finding by the jury must be "from a preponderance of the evidence," and that the belief of plaintiff must have been "immediately" pre-

vious to the commencement of the prosecution, and that the requisite facts, if found, would be "some" evidence of want of probable cause.

The other assignments as to error in giving and refusing instructions were in the following language:

"3. The court erred in giving the 3d, 6th, 7th, and 8th instructions given by the court on its own motion."

"5. The court erred in giving the 1st, 3d, 4th, 5th, 6th, 8th, 9th, 10th, 11th, 12th, 13th, and 15th instructions asked by the defendant."

"6. The court erred in refusing the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, and 20th instructions asked by plaintiff which the court refused."

In *Lowe v. City of Omaha*, 33 Neb., on page 590, NORVAL, J., delivering the opinion of the court, said: "When a party desires this court to review the rulings of the trial court on the admission or exclusion of testimony, he must specifically point out the alleged errors in the petition in error. This has been held in a long line of decisions. (*Tomer v. Densmore*, 8 Neb., 384; *Shaffer v. Maddox*, 9 Neb., 205; *McCormick v. Drummett*, 9 Neb., 384; *Graham v. Hartnett*, 10 Neb., 517; *Birdsall v. Carter*, 11 Neb., 143; *Cook v. Pickrel*, 20 Neb., 435.)"

In *Davis v. Getchell*, 32 Neb., 792, COBB, then chief justice, used the following language: "The fourth assignment of error is in the following words: 'Errors of law occurring during the trial, in the admission and rejection of evidence, which will more fully appear by reference to the bill of exceptions herewith filed.' This method of assigning errors is scarcely permissible in a petition in error. It is permissible in a motion for a new trial, solely for the reason that such motions are usually prepared in the hurry and confusion of the trial, or other absorbing business of the court; but this cause does not extend to the preparation of a petition in error. A reviewing court is

entitled to have the errors complained of specifically pointed out, and upon it should not be thrust the duty of searching through the bill of exceptions to find wherein the court may have erred in the admission or rejection of evidence."

In *Farwell v. Cramer*, 38 Neb., 61, in the opinion of this court by IRVINE, C., occurs the following language: "Complaint is made of the exclusion of certain other evidence sought to be elicited from the witness Cortelyou; but the assignment of error upon this point was that the court erred in refusing to allow the defendants to show by Cortelyou when on the witness stand 'according to the offer made by defendants in the record.' This assignment is too general. By force of the statute a general assignment of 'errors occurring upon the trial' is sufficient in a motion for a new trial, but in a petition in error the assignment should be with sufficient certainty to direct the attention of the court to the particular error complained of. (*Lynam v. McMillan*, 8 Neb., 135; *Graham v. Hartnett*, 10 Neb., 518.)"

In *Gregory v. Kaar*, 36 Neb., 533, it was held that assignments of error which are so vague and indefinite as not to indicate the ruling complained of will be disregarded in this court. It happens that in each case cited above, the error held too indefinitely assigned was with reference to the admission or rejection of evidence; but it will now be shown that the same reasons for the application of this rule apply to instructions given and refused with equal force.

In *Tagg v. Miller*, 10 Neb., 442, in an opinion of this court delivered by LAKE, J., occurs this language: "The second point made is, that the court erred in charging the jury, the assignment of error being 'that the said court erred in the instructions given to the jury on the trial of the said action.' This is too indefinite when it is conceded, as it is of these, that some of the instructions state the law applicable to the case correctly. If the whole charge were bad, such general assignment would be sufficient; but not

being so, the particular portions complained of should have been distinctly pointed out."

In *Birdsall v. Carter*, 11 Neb., 143, the assignment was that the court erred in the instructions given to the jury in the trial of the said cause, and as applicable to this form of assignment the court with approval quoted the last sentence above reproduced from the opinion in *Tagg v. Miller, supra*. In principle there can be no difference whether errors as to instructions are assigned in gross or to the same instructions numbered one, two, three, etc., from first to last. It is a like violation of this principle, less only in degree, to assign error to only a part of the instructions coupled as one, two, three, etc., though such enumeration may not in fact cover all the instructions given or refused. In the case at bar, for illustration, the third assignment was that the court erred in giving the third, sixth, seventh, and eighth instructions given by the court on its own motion. Some of these instructions are quite lengthy. We find no error in any of them, but simply to illustrate the matter under consideration, the seventh instruction, which is brief, is reproduced:

"No. 7. As applied in this case, malice is defined to be the doing of a wrongful act intentionally and with a purpose to wrong and oppress without any just cause or excuse."

Again, the fifth assignment of error was because the court gave the first, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fifteenth instructions asked by the defendant. Here were grouped twelve instructions as to which, in gross, the assignment was made. Solely on account of its comparative brevity the tenth instruction mentioned is selected for the purposes of illustration. It was as follows:

"No. 10. Probable cause is defined to be the reasonable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a reasonably cautious and

Hiatt v. Kinkaid.

prudent man in the belief that the person accused is guilty of the offense with which he is charged."

Again, let this proposition be illustrated from another stand point, by reference to the sixth assignment, which was, that the court erred in refusing to give the instructions asked by plaintiff numbered consecutively from the first to the twentieth inclusive. If one of these instructions was bad the sixth assignment of error must fail for the reasons stated in reference to a kindred matter by COBB, C. J. in *Davis v. Getchell, supra.* He said: "A reviewing court is entitled to have the errors complained of specifically pointed out, and upon it should not be thrust the duty of searching through the bill of exceptions to find wherein the court may have erred in the admission or rejection of evidence." Under the sixth assignment the third instruction was in this language:

"No. 3. If you believe from the evidence that the contract and preponderance of the evidence represented a usurious loan, then you are instructed to find the full value of the drafts, with seven per cent interest from the 29th day of May, 1884, and damages for malicious prosecution."

There was in the pleadings no averment as to usury. The petition was for malicious prosecution, false imprisonment, and the forcible misappropriation to defendant's use of drafts and checks owned by plaintiff. To have given this third instruction would have presented for the consideration of the jury an issue entirely foreign to all those presented by the pleadings. Not only was the instruction bad in this respect, but by it the jury would have been required, upon finding the existence of usury, to have returned a verdict against the defendant for the full amount of drafts and interest, and damages for malicious prosecution. There are other erroneous instructions grouped under the sixth assignment, but reference to them is unnecessary, for the third instruction quoted vitiates this entire assignment.

We have carefully considered each of the many other

assignments made, but have found nothing of such impor-
tance as to justify special consideration.. The judgment of
the district court is

AFFIRMED.