S. S. HEWITT v. COMMERCIAL BANKING COMPANY.

FILED JUNE 5, 1894.    No. 5618.

1. **Review**: ASSIGNMENTS OF ERROR. An assignment of error as to the giving *en masse* of certain instructions will be considered no further than to ascertain that any one of such instructions is properly given. (*Hiatt v. Kinkaid*, 40 Neb., 178.)

2. ——: ——. An assignment in a petition in error, that the trial court erred in refusing to give a group of instructions asked, will be considered no further when it is found that the refusal of any one of such instructions was proper. (*Hiatt v. Kinkaid*, 40 Neb., 178.)

3. ——: ——. An assignment of error as to irregularities of the trial court in the preparation and giving of instructions, which assignment does not specifically designate the instruction or instructions complained of, the only allusion made thereto being by affidavits attached to the motion for a new trial, which were not further authenticated, nor incorporated in the bill of exceptions, will not be considered by this court.

4. **Fraudulent Conveyances**: INTENTION: QUESTION FOR JURY. Fraudulent intent in the execution of a chattel mortgage on a stock of goods, whereby certain creditors are preferred, is a question of fact and not of law, and one to be submitted to the jury for determination.

5. ——: PREFERRING CREDITORS. An intention to defraud cannot be inferred merely from the fact a preference was given to a certain creditor. (*Jones v. Loree*, 37 Neb., 816.)

6. ——: ——: CHATTEL MORTGAGES. A debtor in failing circumstances may lawfully prefer one or more of his creditors, and secure such creditors by mortgage or conveyance absolute, provided the transaction is in good faith and not made with intent to defraud other creditors. (*Costello v. Chamberlain*, 36 Neb., 45.)

7. **Review**: SUFFICIENCY OF EVIDENCE. The evidence examined, and *held* sufficient to support the verdict.

ERROR from the district court of Furnas county. Tried below before COCHRAN, J.

*Bartlett, Crane & Baldrige* and *McClure & Anderson,* for plaintiff in error.

*W. S. Morlan* and *G. W. Norris, contra.*

HARRISON, J.

On the 17th day of September, 1890, the Commercial Banking Company commenced this action of replevin in the district court of Furnas county, to obtain possession of a stock of general merchandise, and its petition then filed, after stating its corporate character and giving a description of the stock, alleged, as showing its ownership and right to possession of the property, that, "On the 3d day of September, 1890, Chester H. Foland, the owner of said goods and chattels, executed and delivered to plaintiff a chattel mortgage on said goods and chattels to secure plaintiff for the sum of $3,067.57, which amount was justly and legally due plaintiff from said Chester H. Foland, and which is still unpaid, and by virtue of said chattel mortgage plaintiff took possession of said goods and chattels on the said 3d day of September, 1890, and held possession of the same until the 17th day of September, 1890, when defendant S. S. Hewitt unlawfully and forcibly took possession of the same and still holds the same in his possession. Said chattel mortgage was duly filed for record in the office of the county clerk of Furnas county, Nebraska, on said 3d day of September, 1890." The petition further contained the usual allegations of petitions in actions of replevin. The defendant, who it appears was the sheriff of Furnas county, in answer to this petition admits the existence of the banking company as a corporation; admits that the chattel mortgage was executed and delivered to it by the party on the date, for the sum, and conveying the stock of goods as pleaded in the petition, and traverses separately, or specially denies, the other allegations of the petition, and as a further defense states:

" For further and separate defense and answer to the plaint-
iff's petition defendant alleges that on and prior to said 3d
day of September, 1890, the said Chester H. Foland was in-
debted to divers persons, firms, and corporations in a large
amount of money, to-wit, over $2,500. Among the said
persons, firms, and corporations to whom said Foland was
then indebted, and who were and are creditors of the said
Foland, are Darrow & Logan, R. L. McDonald & Co., D.
M. Steele & Co.,Tootle, Hosea & Co., the American Hand
Sewed Shoe Company, M. E. Smith & Co., Turner, Frazer
& Co., besides other creditors to the defendant unknown.
That for the purpose of cheating and defrauding said cred-
itors the said plaintiff in this action caused the said Foland
to execute the said chattel mortgage on the 3d day of Sep-
tember, 1890, for said sum of $3,067.57, and said defendant
charges the fact to be that said mortgage was made with
intent on the part of plaintiff and said Foland to hinder,
delay, and defraud said creditors of said Chester H. Foland
of their lawful rights, debts, and demands, and this de-
fendant alleges the fact to be that said mortgage and execu-
tion thereof was not accompanied by an immediate delivery
and was not followed by an actual and continued change of
possession of the said property mortgaged; that on the said
4th day of September, 1890, judgments were obtained by
the American Hand Sewed Shoe Company, the said D. M.
Steele & Co., and R. L. McDonald & Co., for the respect-
ive amounts due and owing them from the said Chester H.
Foland by confession in said suits. Executions were duly
issued, and this defendant, as sheriff of Furnas county,
executed said executions by taking said property described
in the petition herein; and this defendant now holds the
said property by virtue of said executions, which are duly,
legally, and rightfully executed, and which are the same
acts and doings complained of in the plaintiff's petition,
and none other or different; that said executions were
issued because of the said fraudulent transfer of said prop-

erty to said plaintiff." The banking company filed a reply to the answer, in which it admits the recovery of the judgments pleaded in the answer and denies each and every other allegation therein contained. There were two trials in the district court before the judge thereof and a jury, the second one of which resulted in a verdict and, after motion for a new trial regularly submitted was overruled, a judgment in favor of the banking company, to reverse which the plaintiff in error prosecuted his petition in error to this court.

There are several assignments of error which complain of the action of the court in sustaining objections to certain interrogatories propounded to witnesses during the progress of the trial, but as these are ignored in the brief filed for plaintiff in error, they will be deemed waived and will not be further noticed.

The sixth assignment of error is as follows : "The court erred in giving paragraphs 4, 6, 7, 9, 10, 11, 12, 13, and 14 of instructions to the jury given by the court on its own motion." We have examined the instructions enumerated in the above paragraph of the petition in error, and several, if not all, of them are fully pertinent to the issues in the case and correctly directed and informed the jury; and having determined this, the assignment quoted will not be further considered, agreeably to the rule announced in *Hiatt v. Kinkaid*, 40 Neb., 178, viz.: "An assignment of error as to the giving *en masse* of certain instructions will be considered no further than to ascertain that any one of such instructions was properly given." (See, also, *McDonald v. Bowman*, 40 Neb., 269 ; *Jenkins v. Mitchell*, 40 Neb., 664.)

Assignment No. 7 reads as follows: " The court erred in refusing to give paragraphs 2, $2\frac{1}{2}$, 3, 4, 5, 6, and 7 of instructions asked for by the plaintiff in error." There are several of the instructions of those grouped in this assignment, the design of each of which was to challenge the

attention of the jury to points in the case which had already been fully and fairly covered by the instructions given by the court on its own motion, and there was no error in refusing these requested by plaintiff in error, and one, if not more of them, was not warranted by the evidence, and we must, as to this assignment, follow the doctrine of *Hiatt v. Kinkaid, supra,* holding that " an assignment in a petition in error, that the trial court erred in refusing to give a group of instructions asked, will be considered no further, when it is found that the refusal of any one of such instructions was proper."

In the ninth assignment of error it is stated as follows: "There was irregularity in the proceedings in this, that after the evidence was in, and before argument of counsel, the judge, J. E. Cochran, stated in the presence of the jury that he had prepared his instructions and had them type-written prior to the present session of court; that he had made up his mind on the question of the right of shifting security from the homestead of Chester H. Foland to the goods in controversy; that there was no question but that the said Foland had said right, and that he ought to have instructed the jury to that effect on the other trial; that the charge of the court was given upon its own motion, is partly type-written and partly in the handwriting of J. T. Lindsay, one of the attorneys for plaintiff in this action, and that that part of the instructions which is in the handwriting of J. T. Lindsay, attorney for plaintiff, was handed by said Lindsay to said court in the presence of the jury, attached to said type-written instructions as that of the court. All of which conduct of the court in the presence of the jury was irregular and prejudicial to the rights of plaintiff in error herein. Said facts appearing from the affidavits marked 'Exhibit A' and 'B' attached to the motion for a new trial, which will be found in the transcript herein." There is no instruction referred to by number in the above assignment of error, or specifically or definitely

pointed out as being the one which was partly type-written and partly in the handwriting of the attorney for defendant in error, nor was any instruction excepted to for this reason.   The only manner in which the matters alluded to in this assignment of error appear in the record are by some affidavits attached to the motion for new trial, and which are not further authenticated and are not incorporated in and made a part of the bill of exceptions, and, following the rule established by this court, will not be considered. (See *Strunk v. State*, 31 Neb., 119; *Burke v. Pepper*, 29 Neb., 320; *Vallindingham v. Scott*, 30 Neb., 187.)

Another assignment of error which is insisted upon in the argument is that the verdict was not sustained by sufficient evidence.   The testimony discloses that about one year prior to the date of the execution and delivery of the mortgage, which is attacked as fraudulent in this action, to the defendant in error, one Foland purchased of a Mr. Williams a stock of general merchandise and in payment therefor gave him notes secured by mortgage upon some real estate to secure the payment of such notes.   The land mortgaged to Williams was, it appears, the homestead of Foland and was mortgaged in the sum of $2,000, which as a lien was prior to the lien of the mortgage given to Williams.   That when the first of the notes evidencing the consideration for the sale of the stock of goods from Williams to Foland became due, Foland failed to pay it, and in a conversation then had (this being some six months subsequent to the time of the sale of the goods) Foland agreed to give Williams a chattel mortgage on the stock, Williams claiming that the land was insufficient security and not worth at forced sale to exceed the amount of the prior lien of $2,000, Foland expressing himself as perfectly willing and ready to do this if Williams would release the mortgage which he then held on the land, as such action would clear his homestead of the lien of the second mortgage; that Foland was indebted to the bank, defend-

ant in error, and on the 3d day of September, some six months after the conversation with Williams in which he agreed to execute the chattel mortgage to Williams, he went into the place of business of the banking company and there made a statement to the party in charge of its affairs that he desired to borrow some money to meet some immediate demands which were then being pressed for payment, and during the interview he stated, in substance, that if he could not borrow the money he must "go under" or "break up;" that the party there acting for the bank then asked Foland to give the bank a mortgage on his stock of goods as security for the sum he was owing it, $1,130.20; that Williams at this time came into the banking room and was called into the conversation and transaction and at once insisted that he was entitled to a first mortgage on the goods and reminded Foland of his promise he had made to give him the mortgage on the stock. The bank then tried to sell its claim to Williams, but not succeeding in this, bought his claim, which amounted to $1,937.37, and for the aggregate sum of both claims, $3,067.57, Foland executed and delivered to the bank the mortgage in evidence in this case, and by virtue of which the banking company claims the stock of goods, and the bank immediately took possession of the stock, closed the store, completed an invoice of the stock, and afterwards sold it, a portion at auction and a part of it at private sale; that during the time the goods were being sold by the bank Foland was employed as clerk and assisted in selling off the goods. It is shown that the amount of the inventory of the stock of goods was, one witness states, about $3,000, Foland testifies between $3,800 and $3,900, but that it did not sell for sufficient to pay the amount of the mortgage, which relieves the transaction of the contention of the plaintiff in error, that it was a fraudulent one, because the value of the stock was in excess of the amount of the indebtedness secured by the mortgage. The testimony further discloses that when Will-

Hewitt v. Commercial Banking Co.

iams sold his claim to the bank they paid him by issuing to him a certificate of deposit, due on demand to his order, for the whole amount of the claim; that of this he has since been paid about $600, the balance remaining unpaid. The above summary is a statement of the salient points in the testimony, and with the exceptions possibly of a few minor details, not materially affecting the issues or controlling in their influence in the conclusion to be arrived at from a consideration of the testimony. The transactions between the parties seem to have been, judging from the evidence, fairly, openly, and honestly conducted. The debts secured were *bona fide* debts, and the mortgage is shown to have been executed in good faith. The debtor merely exercised the right which the law accords him, of preferring creditors and paying or securing them. (See *Jones v. Loree*, 37 Neb., 816; *Lininger v. Raymond*, 12 Neb., 19.) The question of fraudulent intent was one of fact and to be submitted to the jury for their determination. (*Connelly v. Edgerton*, 22 Neb., 82; *Davis v. Scott*, 22 Neb., 154; *Riley v. Melquist*, 23 Neb., 474; *Fitzgerald v. Meyer*, 25 Neb., 77; *Feder v. Solomon*, 26 Neb., 266.) We think that the issues of fact in the case were fully and fairly submitted to the jury for their consideration and determination; that their verdict was warranted and sustained by the evidence, and clearly not against and contrary to the weight of it, and will not be disturbed or set aside. The judgment of the district court is

AFFIRMED.