CHARLES PETERSON V. OTTO SKJELVER.

FILED FEBRUARY 5, 1895.   No. 5570.

1. **Boundaries:** MONUMENTS. Where the original mounds or monuments established during a government survey can be identified and ascertained, they will control course and distance.

2. ———: ———: FIELD NOTES: EVIDENCE. Field notes and plats of the original government survey are competent evidence in ascertaining where monuments are located in case a government corner is destroyed, or the point where it was originally placed cannot be found, or the location of the original corner is in dispute; but when it is shown by uncontradicted evidence that a section corner was located by the government surveyors at a certain point, such location must control, even though it is at a place different from that given in the field notes and plat. *Woods v. West*, 40 Neb., 307, followed.

3. ———: ADMISSION OF EVIDENCE. The rulings of the trial court in admitting and excluding evidence examined, and *held* not erroneous or not prejudicial to the rights of the complaining party.

4. **New Trial:** NEWLY DISCOVERED EVIDENCE. The showing filed with motion for new trial in support of the grounds of newly discovered evidence and accident and surprise *held* insufficient.

5. ———: ———. Where it is sought to set aside a verdict for alleged misconduct of jurors, it must appear that the acts upon which the complaint is founded were not known to the party who seeks to take advantage of them, or his counsel, during the progress of the trial in time to have brought them to the attention of the trial court.

6. **Trial:** IMPEACHING VERDICT: STATEMENTS OF JURORS: AFFIDAVITS. Affidavits made by parties which purport to contain statements made by jurors during alleged conversations with them after the close of the trial of a case and their discharge therefrom, in reference to acts and discussions which occurred in the jury room while the jurors were deliberating upon their verdict, and in regard to which the affidavits of the jurors would not be received, are incompetent and insufficient to aid in impeaching the verdict.

ERROR from the district court of Webster county. Tried below before BEALL, J.

*J. R. Wilcox* and *Chaney & McNitt*, for plaintiff in error.

*J. S. Gilham* and *James McNeny, contra.*

HARRISON, J.

On the 9th day of March, 1891, Otto Skjelver commenced an action of ejectment against Charles Peterson in the district court of Webster county, in which he filed the following petition:

"The plaintiff complains of the defendant for that said plaintiff has a legal estate in and is entitled to the possession of the following described premises, to-wit: The tract of land heretofore supposed to be the eastern side of the southeast quarter of section 28, town 3, range 12, Webster county, Nebraska, being the tract included within the north and south lines of said quarter section and bounded on the east by the center of the highway left between said quarter by plaintiff and the southwest quarter of section 27, in said town and range, by plaintiff and defendant,—said highway having been recognized by plaintiff and defendant, each of them plowing up to it and no further, for the past thirteen years,—and upon the west by the line of a pretended survey made by W. E. Thorne and — Folden during the summer of 1890. The said defendant unlawfully withholds possession of said land from plaintiff and has withheld the same since the 1st day of March, 1891. The defendant, while unlawfully in possession of said premises, has received the rents and profits therefrom from the 15th day of October, 1890, to the commencement of this action, amounting to the sum of one hundred dollars, and has applied the same to his own use to the plaintiff's damage in the sum of one hundred dollars. The plaintiff therefore prays judgment

for the delivery of the possession of said premises to him
and also for said sum of one hundred dollars for said rents
and profits and costs of suit."

The answer filed on behalf of Peterson was a general
denial. A jury was waived and the first trial had to the
court. There was a finding and judgment in favor of Pe-
terson, which was set aside at his request and a new trial
ordered. At a subsequent term of court the second trial
occurred before the court and a jury and Skjelver was suc-
cessful, the jury returning a verdict in his favor. A mo-
tion for new trial was filed by Peterson, argued and over-
ruled, and judgment rendered on the verdict, and Peterson
has prosecuted error proceedings to this court.

As will be gathered from the petition, the main dispute
in this case is in regard to the boundary or division line
between the southeast quarter of section 28, township 3,
range 12, in Webster county, and the southwest quarter of
section 27, in the same town and range. The first tract
described is owned by Skjelver and the second by Peterson.
The exact location of the southeast corner of the southeast
quarter of section 28, or the corner common to sections 28,
27, 33, and 34, was, and now is, the main point to be de-
termined in the controversy, for the ascertainment of its
true position will settle the starting point of the division
line between the two quarter sections and effect an adjust-
ment of it and the dispute. Skjelver's right to the land,
by virtue of adverse possession for the statutory period,
was also put in issue and tried.

The second, third, and fifth assignments of the petition
in error are first considered by counsel for Peterson in their
brief, and it is there stated: "They present the question
whether it was competent for plaintiff below to prove the
existence of government corners by parol evidence, with-
out first accounting for the absence of the official record of
the survey," or, in other words, that the field notes or rec-
ord of the government survey and the plat are primary,

original, controlling, and conclusive evidence when the location of government corners is in controversy, and must be introduced, and if not obtainable, then their contents. With this we cannot agree. The field notes and plats are competent testimony where the true position of such a corner is not known or is in doubt, and is sought to be established, but not controlling or conclusive as to such location; and when the original mounds or monuments established by the government survey can be identified or clearly shown, they will be accepted in preference to what is stated in the field notes, if at variance therewith. (*Woods v. West,* 40 Neb., 307; *Thompson v. Harris,* 40 Neb., 230, and cases cited.) It is further argued under the third assignment that George Hutton, a witness for Skjelver, should not have been permitted to answer a question propounded to him, as shown on page 28 of the bill of exceptions, being question 6 on said page. Reference to the page and question designated discloses that the objection to the question was overruled and no answer given by the witness, but the evidence which it is argued was objectionable was in answer to the next interrogatory, or number 7. It may be claimed, however, that question 7 was but a continuation of question 6, and that the objection should be considered as applicable to the question as a whole. If this view is allowed to prevail, it cannot avail plaintiff in error. The objection interposed to the interrogatory was as follows: "Objected to, as being hearsay testimony." Ignoring any criticism which might be made to the form or substance of this as an objection, we will say that the question was one to which the objection was properly overruled. It was not open to this objection. It was probably improper in that it was leading and called for a conclusion of the witness based upon certain facts and the acts of other parties, which if detailed in answer to competent interrogatories would have been competent.

The sixth assignment of error refers to a motion made

during the giving of testimony by the witness Nels Soren-
son. The motion, as it appears in the record, was inter-
posed after the fifteenth question put to this witness had
been asked and answered, and was as follows: "The de-
fense move to strike out the testimony of the witness as ir-
relevant, incompetent, and hearsay testimony." This was
overruled by the court, and, we think, correctly. The
motion was evidently intended to apply to all the testi-
mony of the witness given up to that time and could not
be sustained, as the evidence, while a great portion of it
was introductory, was competent and necessary to a full
understanding by the court and jury of the evidence of the
witness which followed it.

. One contention of counsel for plaintiff in error which
we think best to notice here is that the verdict was not
sustained by the evidence. The testimony develops that
the southeast quarter of section 28, the Skjelver land, was
first occupied by Hans Tullifson in 1872 or 1873, who
abandoned it very soon, probably a month after settling
upon it. It was then occupied by one Gunnard, who in
1876 surrendered his claim to Skjelver, who then entered
into possession, and by whom it had been retained up to
the time of the trial of this case. The adjoining, or
southwest, quarter of section 27 was purchased by Peter-
son during the year 1878, and he then and has since occu-
pied it. Tullifson testifies that when he took possession of
the southest quarter he found the corners, including the
southeast one, and in his search for this particular corner
he found a stone which had apparently been placed there
to mark the position of the corner; that he threw up a
mound where he had found the stone, and put a stick in
the mound. The field notes were introduced in evidence
on the part of plaintiff in error, and one of the statements
therein contained was as follows: "Set a limestone 18x16
x4 in. thick for a corner to sections 27, 28, 33, and 34."
This was the disputed corner. When Skjelver entered into

possession of this land he found a mound and a stick at this corner. Tullifson, it will be remembered, stated that he found a stone monument at the corner, and made a mound and put the stick in it. Some other persons who had lived in the county testified that they had seen this corner. Peterson, when he occupied the adjoining quarter section, plowed along the line between him and Skjelver, but left a strip about two rods wide, measuring from the land he cultivated to the center of a road along the line between him and Skjelver, and in the center of which road stood the southeast corner, as claimed by Skjelver, who did the same on his side of the road. There were other facts and circumstances in the record which tended to show that the corner found by Tullifson and adopted by Skjelver was the government corner. On the other hand, a number of the old settlers of the township and the county testified that no corner had ever been discovered at that particular point in dispute, and some that there had apparently been no corners established in the interior of the township, or none had ever been discovered or discoverable by such search as had been made and assisted in by them, the particulars of such searches being detailed in some instances. There seem to have been two or three surveys made, and in at least two, one in 1884 and one in 1890, the corner on the southeast of section 28 was claimed to have been determined to be at a point about ten rods west of the "Skjelver corner," which would give Peterson the strip of land in controversy; but without further quoting from or giving a summary of the testimony we will say that a careful perusal and consideration of all of it convinces us that it was fully sufficient to sustain a verdict founded upon a finding that the corner claimed by defendant in error was fully identified by it as the government corner established during the survey made for the government.

The ninth assignment of error is as follows: "The court erred in giving instructions 2 and 3, given on its own mo-

tion." Instruction No. 2 is a copy of a portion of the syllabus to the case of *Coy v. Miller*, 31 Neb., 348, was entirely applicable to the facts in the case, and it was not error to give it; and under the rule where alleged error in giving instructions is stated, as it is in this assignment, we need not consider it further. (*Hewitt v. Commercial Banking Co.*, 40 Neb., 820.)

The assignment of error in relation to the refusal to give instructions offered by plaintiff in error and in modifying some before reading them, is too general, in that the instructions, the refusal to give or modification of which is complained of, are stated collectively, and an examination convinces us that at least one was properly refused, the grounds sought to be covered by it having been fully embodied in others which were given; and some were not applicable to the evidence, and having determined that any one of them was properly refused, under the established rule of this court we need not further consider them. (*Hewitt v. Commercial Banking Co.*, 40 Neb., 820.) As to those modified, we are unable to perceive wherein such modification was harmful to the rights of plaintiff in error.

Complaint is made, in the fourth and seventh assignments, of the action of the trial court in sustaining objections to questions propounded to Mr. Campbell, one of the witnesses for defendant in error, and to Skjelver during cross-examination, and excluding the testimony sought to be elicited by such questions. To some, if not all, of these interrogatories these objections were properly sustained, for the reason that they were without the province of a proper cross-examination. To others the answers would have been wholly immaterial, and the same facts had been, or were afterward, shown both on direct and cross-examination of other witnesses, and the complaining party was not prejudiced in any degree by the action of the court.

Two of the grounds of the motion for a new trial were as follows:

"3. Newly discovered evidence, material for the defendant, which he could not with reasonable diligence have discovered and produced at trial, as shown by affidavit attached hereto, filed herewith, and marked 'I.'

"5. Accident and surprise which could not have been prevented by ordinary diligence, as shown by affidavit filed herewith, marked 'H.'"

There were two affidavits filed in support of these grounds of the motion, in which it was stated that one Thorne was a material witness for Peterson, and that he, unexpectedly to Peterson and his counsel, left Webster county just prior to the time of trial of the case. It is further stated in one of the affidavits that the jury was impaneled for the trial of the case late on Friday, the 19th of February, 1892, and that some one on that day,—it does not appear who, whether an officer or not,—was sent to the home of the witness with a subpœna, and Peterson states in his affidavit that he could not with reasonable diligence have procured the evidence of this witness, Thorne, at said trial. This was not sufficient. It was not shown to be newly discovered evidence. On the contrary, the affidavits filed on behalf of the moving party discloses that both he and his counsel knew of this witness and to what he would testify, and fail to show any reasonable diligence in obtaining his presence during the trial. The district court was clearly right in its rulings on these grounds of the motion for a new trial.

Accompanying the motion for new trial were several affidavits tending to show misconduct of jurors during the trial, and also setting forth the influences and reasons, as given by jurors after the verdict was returned, which had operated on their minds and caused them to form the conclusions which were embodied in their verdict rendered. Motions were made by defendant in error to strike these affidavits from the files, and were sustained. This, we think, was error. The motions should have been overruled,

the affidavits retained and considered with the motion for a new trial. The next inquiry which arises is, if these affidavits had been considered, were the facts stated in them sufficient to call for the setting aside of the verdict and ordering a new trial? If so, the striking from the record was prejudicial error, and if not, the reverse. Such of them as complained of misconduct of jurors were .based upon actions of the jury during the progress of the trial and before verdict was returned, but in none of them is it stated that the complaining party did not know of them before the return of the verdict. If in possession of such knowledge it should have been brought to the attention of the court, and if it was not so known, this fact should be shown by the affidavits, and, as it was not, they were insufficient. Two of the affidavits refer to and state the substance of conversations which the affiants claim they had with jurors after the verdict was returned and the jury discharged. In one of these affidavits it is set forth that a juror said certain matters were discussed in the jury room and were urged upon him to influence him in favor of the verdict returned, but it does not appear that he claimed to have been influenced by them to any extent. The other is more specific and direct in its statements, but they are both in regard to matters in which the affidavits of jurors themselves would have been incompetent and would not have been received for the purpose for which the ones under consideration were offered, and clearly not competent when presented as they were in the shape of statements of parties other than jurors of what was said by jurors during conversations with them after the trial had closed. (*Lamb v. State*, 41 Neb., 356.) The action of the court in striking the affidavits from the records was not prejudicial to the rights of plaintiff in error. The judgment of the district court is

AFFIRMED.