(75 South. 678)

No. 22383.

STATE v. JOHNSON et al.

(April 16, 1917. On Rehearing, June 11, 1917.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ⚖➤589(1)—CONTINUANCE—SERVICE OF COPY OF JURY LIST—VERIFICATION.

The law (Rev. St. § 992) requires that a person indicted for a capital crime, or crime punishable with imprisonment at hard labor for seven years or upwards, shall be served with a copy of the indictment and a list of the jurors who are summoned to try him, but does not require that such copy and list shall be certified by the clerk or bear the seal of the court, and, though there are reasons why they should be thus verified, the fact that they are not affords no grounds for a continuance, when no complaint is made that the copy and list, as served, were incorrect.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1315.]

2. WITNESSES ⚖➤340(3)—IMPEACHMENT—TRUTHFULNESS.

It is incompetent to interrogate a female witness concerning her chastity, as impeaching her character for veracity.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1121.]

3. CRIMINAL LAW ⚖➤1170½(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

A witness for the defense in a criminal case having testified that he had seen some persons passing his house "whooping and yelling," the exclusion of the question, "What were they doing?" on the ground of irrelevancy, discloses no prejudice to defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3129.]

4. CRIMINAL LAW ⚖➤1091(5)—EXCLUSION OF EVIDENCE—FINDING OF TRIAL COURT.

Where a question propounded by defendant's counsel to a witness for the defense in a criminal case is excluded as irrelevant and the bill of exception contains no recital tending to show its relevancy, the finding of the trial court on that subject will be accepted by this court as correct.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2816, 2831, 2832.]

5. CRIMINAL LAW ⚖➤730(1)—TRIAL—MISCONDUCT OF COUNSEL.

A statement by counsel employed to aid in a prosecution upon a charge of murder to the effect that his client, the father of the deceased, had given, as a reason for his employment, boasts, attributed to defendant's counsel, that he would acquit the accused, by reason of his (the counsels') relationship to the prosecuting officer, is highly improper and might prejudice the jury against the accused; but, where it appears that, upon objection by defendant's counsel, the trial court instructed the jury to disregard the statement, this court, influenced also by its knowledge of the high character of the counsel and prosecuting officer to whom the statement referred, must assume that the information upon which it was based was incredible to the jurors among whom those officers of the court have their homes, and hence that it could have worked no such prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693.]

6. CRIMINAL LAW ⚖➤680(1)—TRIAL—OPENING—EVIDENCE—DISCRETION OF TRIAL COURT.

As a general rule, in the trial of criminal prosecutions, the state should put its whole case in evidence in the opening, and reserve only its rebuttal testimony to meet the evidence adduced by defendant; but the administration of justice requires that the trial courts should be vested with certain discretion in such matters, and the rule governing its exercise which meets with the approval of this court is that material testimony should not be excluded because of-

fered after defendant has rested, although not in rebuttal, unless it has been kept back deliberately and for the purpose of deceiving and obtaining an undue advantage of the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1609, 1613.]

7. CRIMINAL LAW ⊗═687(1)—EVIDENCE FOR PROSECUTION—REBUTTAL—PRESUMPTION.

Where evidence offered by the prosecution upon a new point is admitted after the defendant has closed, it should always be open to him to meet the same with counter evidence, but, if he fails to assert that right, it will be presumed that no counter evidence was obtainable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1621, 1625.]

8. CRIMINAL LAW ⊗═872, 874, 1144(12)—TRIAL—VERDICT—FURTHER DELIBERATION.

Where a jury in a criminal case appears in court, and, through its foreman, announces that it has found a verdict, which he then reads, and which, upon being polled, all the jurors declare is their verdict, save one, who declares that it is not his verdict, it is competent for the court to order the jury to retire for further deliberation, and, if they thereafter agree upon a verdict, such verdict will be sustained, whether it be that originally announced or another responsive to the charge or defense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2082, 2083, 2085–2088, 2901, 3029, 3030.]

9. CRIMINAL LAW ⊗═925(2, 3)—TRIAL—MISCONDUCT OF JURY.

The fact that the father of a person who was killed, actively assisting in the prosecution of those charged with the killing, entered a room where the only two jurors who had been accepted, in charge of a deputy sheriff, were eating a meal, and said to them, "Gentlemen, all I ask is a square deal," and, being ordered out of the room by the deputy sheriff, said, "All I want is justice," is an insufficient reason for setting aside a conviction in the case. Such statements conveyed no information to the jurors that they did not already possess or were not thereafter to acquire.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2240.]

10. CRIMINAL LAW ⊗═925(1)—TRIAL—MISCONDUCT OF JURY.

In a prosecution upon a charge of murder, it is improper for a deputy sheriff, having jurors in charge, to allow one of them to enter a post office, which they are passing, take his letters from his box and read them, even though the juror remains within his sight and communicates with no one; but where, upon an application for new trial, the juror testifies that the letters read by him contained no reference to the case which he had been accepted to try,

the presumption of prejudice to the defendant is rebutted, and the new trial is properly refused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2248, 2250.]

11. CRIMINAL LAW ⊗═675—TRIAL—EVIDENCE IN REBUTTAL—CUMULATIVE EVIDENCE.

The fact that testimony proper in rebuttal is also cumulative to that offered by the state in the opening of a criminal case is not of itself a sufficient reason for its exclusion; a necessity for strengthening the testimony in chief may arise from that offered by defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 850, 1607.]

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Ben Johnson and Hyman Johnson were convicted of manslaughter, and they appeal. Affirmed.

Albert P. Garland, of Ville Platte, for appellants. A. V. Coco, Atty. Gen., and R. Lee Garland, Dist. Atty., of Opelousas (L. Austin Fontenot, of Opelousas, S. W. Gardiner, of Ville Platte, and Vernon A. Coco, of Marksville, of counsel), for the State.

MONROE, C. J. [1] Four persons having been prosecuted for murder, two of them, Ben and Hyman Johnson, were convicted of manslaughter, and bring up this appeal.

Their first bill of exception was reserved to the overruling of a motion for continuance which was based upon the ground that no "legally certified" copies of the indictment and "list of venire" had been served on them. It is not asserted that no such lists were served, or that the lists, as served, were incorrect; the complaint being that they did not bear the seal of the court. The law (R. S. § 992) does not require the seal of the court, or even the certificate of the clerk, and, whilst we are of opinion that, for various reasons, the copies and lists should be certified in that way, the fact that defendants complain of no prejudice by reason of alleged incorrectness in those served upon them renders the omission of that formality

unimportant. Luster v. State, 63 Tex. Cr. R. 541, 141 S. W. 209, Ann. Cas. 1913D, 1089.

[2] 2. A female witness called by the state, having testified that she had recently married her then husband, and had previously been married to another man, was asked on cross-examination whether she had had sexual intercourse with other men than her husband, which question was objected to and ruled out on the ground that the witness was under the protection of the court and should be respected. The bill discloses no reason for asking such a question, but, assuming that the purpose was to impeach the character of the witness for veracity, we are of opinion that it was properly excluded. State v. Hobgood, 46 La. Ann. 855, 15 South. 406; State v. Baudoin, 115 La. 837, 40 South. 239; State v. Romero, 117 La. 1003, 42 South. 482.

[3] 3. Defendants placed a witness on the stand who testified that he remembered the night the dance was held at Adolph Johnson's house, when Sam Russell was alleged to have been killed, and that he remembered seeing some one pass his house on the road leading to Johnson's "whooping and yelling." He was then asked, "What were they doing?" to which the district attorney objected, and the objection was sustained, on the ground, as stated by the judge, that "this testimony was entirely foreign to the issue of the case; no relevancy whatever was shown."

The witness had already testified that he had seen some one pass his house "whooping and yelling," and it appears to us that the question, "What were they doing?" could but have elicited the information that they were whooping and yelling. We are therefore of opinion that the ruling complained of discloses no prejudice to the defendants.

[4] 4. Another witness was asked whether he had heard any whooping along the public road leading to Johnson's on the night that Sam Russell was alleged to have been killed,

which question was objected to as irrelevant, and, the objection having been sustained, a bill was reserved. There is however nothing in the bill to indicate that the statement of the judge that "the testimony was irrelevant to the issues of this case" was not well founded.

[5] 5. Mrs. Russell, mother of the decedent, having been called as a witness for the state, was asked on cross-examination the following question:

"Mrs. Russell, you and your husband are very anxious to see the defendants convicted, and have gone so far as to employ two attorneys to assist the district attorney?"

Whereupon L. Austin Fontenot, of counsel to assist the district attorney, arose and said:

"I will tell why Mr. Russell employed me. He told me that he employed me because of the brags you (addressing defendant's counsel, who is a nephew of the district attorney) were making that you would acquit those defendants, because of your relationship to the district attorney."

To which remarks counsel for defendants objected, and the court instructed the jury to pay no attention to them. A bill was reserved, however, and contains the recital by defendant's counsel:

"That, although said remark was an unqualified falsehood, if made by the said J. W. Russell, it was made in the presence of the jury, and, though the court instructed the jury not to pay any attention to the tilts of counsel, it was intended and probably did have the effect of prejudicing the jury, or some of them, against the defendants."

The bill contains the further recital that "it was read and signed in the presence of the district attorney and in open court before sentence," from which we infer that it was read in the presence and hearing of the jury.

The remark complained of was based upon information that appears to us to have been so entirely incredible that it is surprising that it should have been made. The counsel concerning whom it was made and his uncle, the district attorney, have, however, lived

all their lives among the people from whom the jury was selected, and we should be slow to believe that any jurors thus selected would be at all influenced by a remark of that kind, unless, perhaps, to resent it. At all events there is no complaint of the action of the judge in the premises, there was no request that the jury be discharged, and we are unable to say that the matter, as presented by the bill, discloses a sufficient reason for setting aside the verdict which was rendered by them. The cases of State v. Marceaux, 50 La. Ann. 1137, 24 South. 611, State v. Bessa, 115 La. 259, 38 South. 985, State v. Accardo, 129 La. 666, 56 South. 631, State v. Washington, 136 La. 855, 67 South. 930, State v. Bacon, 138 La. 654, 70 South. 572, and others to which we are referred by defendant's counsel, involved different conditions the mere statement of which would differentiate them from the case here presented.

[6] 6. The state called a witness in rebuttal and asked him the question:

"On the night that Sam Russell was killed, did he borrow your knife and fix his harness and return it to you before he left for the dance?"

To which defendants' counsel objected—

"for the reason that all of the state witnesses had testified that Sam Russell had no knife on the night in question, on their examination in chief, and that this was not therefore rebuttal evidence, but merely cumulative evidence, to show that the deceased had no knife on that occasion."

The statement per curiam is:

"It was in rebuttal of the testimony of these defendants and their witnesses, who swore that the deceased had a knife at the time he was fighting with them."

[11] The fact that testimony proper in rebuttal is also cumulative to that offered by the state in the opening of a criminal case is not of itself a sufficient reason for its exclusion; a necessity for strengthening the testimony in chief may arise from that offered by defendant.

[7] 7. After the defendants had closed their case, "the district attorney moved the court to recall the defendant Ben Johnson for the purpose of laying the foundation to prove up an extrajudicial statement said to have been made by him, to which defendant's counsel objected, on the ground that, if the state wished to lay such foundation, it should have done so before the defendants had closed, as they will not now have an opportunity to rebut such extrajudicial statement, if any." And, the objection having been overruled, a bill was reserved. From another bill it appears that Ben Johnson, having been recalled, was asked whether he had not told Willie E. Clark, the day after the difficulty, that he (Ben Johnson) had given Sam Russell just what he had been waiting to give him for five years, and that said defendant denied having made any such statement, whereupon the state called Willie E. Clark, whose examination proceeded as follows:

"Q. Did you have a conversation with Ben Johnson the day after Sam Russell was alleged to have been killed?. A. Yes. Q. Did you hear Ben Johnson say to you, or to any one in your presence, that he had given Sam Russell just what he had been waiting to give him, five years?"

To which question defendants objected, for the reason that, if the state wanted to show any such confession, it should have done so in its presentation in chief, and not in rebuttal, for defendants are not entitled to introduce any evidence in rebuttal of such supposed rebuttal evidence. Which objection of defendants was overruled by the court for the following reasons, to wit: The state had the right to prove this extrajudicial statement made by this defendant to this witness. Whereupon the witness answered:

"I heard him say, 'I haven't forgot what Sam Russell gave me with a bottle five years ago.'"

To which ruling of the court defendants excepted, etc.

The statement testified to was not a confession, but rather in the nature of an incriminating admission. State v. Picton, 51 La. Ann. 624, 25 South. 375. The accepted

doctrine applicable to the question presented has been thus stated by this court in a case in which, the prosecution, having rested and the defendant having declined to offer any evidence, the prosecution was allowed to call additional witnesses, to wit:

"An eminent writer and recognized authority on criminal law (Wharton) says: 'The order of testimony is for counsel to arrange, subject to the discretion of the court. The general rules prescribed (e. g. that party must make out its case in evidence in chief) are founded on right reason and will be usually maintained. But it is within the discretion of the court trying the case to permit these rules to be suspended for the purposes of justice; and a deviation in this respect is not a subject of revision by an appellate court.' Wharton's Crim. Law, § 3009. Also: 'The judge at the trial has discretion as to the admission of evidence out of the regular and usual course, and must exercise such discretion when necessary to promote justice.' Id. § 3342."

And the opinion then cites State v. Coleman, 27 La. Ann. 694, State v. Colbert, 29 La. Ann. 716, and State v. Woods, 31 La. Ann. 268, as, perhaps, settling the jurisprudence of this court on the subject. State v. Rose, 33 La. Ann. 933.

In State v. Paul, 39 La. Ann. 329, 1 South. 666, it was held that in the trial of a criminal case neither party should be allowed to introduce testimony after the evidence had been closed, the argument completed, the charge delivered, and the judge about to deliver a special charge upon a point which the prosecution had failed to support by evidence, and the court took occasion to quote from the opinion in State v. Chandler, 36 La. Ann. 177, to the effect that:

"The rules of practice have wisely provided that, when the evidence has been closed, the examination of witnesses is at an end,"

—and to say:

"We are aware that jurisprudence has recognized some exceptions to the general rule, and that the exercise of a sound discretion by the trial judge, to the extent of admitting evidence immediately after the case had been closed has been justified on appeal in this state as well as in other appellate courts [citing the authorities to which we have above referred]. But instances of the kind cannot and should not be numerous."

The case thus quoted was rather an extreme one, in that the state attempted to introduce evidence after the judge had charged the jury, and is hardly applicable to the situation here disclosed, to which, by apparent weight of authority, the following rules are applied, to wit:

"While orderly procedure would suggest that the state should put its whole case in evidence in chief, and reserve only its rebuttal testimony to meet the case of the prisoner, yet there is no fixed or inflexible rule which would require a trial judge to reject testimony in rebuttal which more properly should have been presented in the opening of the case. This is a matter resting in the sound discretion of the court below, and, unless the case should disclose an abuse of this discretion, it will not be interfered with by this [appellate] court." Moore v. State, 96 Tenn. 209, 33 S. W. 1046.

"The proper rule for the exercise of this discretion is that material testimony should not be excluded because offered by the plaintiff after defendant has rested, although not in rebuttal, unless it has been kept back by trick and for the purpose of deceiving the defendant and affecting his case injuriously." Thompson on Trials, § 346.

The most serious objection, we may add, to the admission of evidence upon a new point, offered by the prosecution in a criminal case after the defendant has rested, is that it should always be open to defendant to meet the evidence so admitted with counter evidence, and the necessity of giving him such opportunity may result in an unfortunate break in, or protraction of, the trial. In the instant case, though something is said about the defendants having no opportunity to meet the testimony of Clark, it nowhere appears that any request was made of the trial judge upon that subject. If such request had been made and denied, quite a different case would be presented, and it is to be presumed that no such request was made, because defendants were unable, save by the testimony of Ben Johnson himself, whose testimony was heard, to rebut Clark's statement.

[8] 8. The jury came into court and announced the following verdict:

"We, the jury, find the prisoners Adolphe Johnson and Willie Johnson not guilty, and the prisoners Ben Johnson and Hyman Johnson guilty of manslaughter, and recommend them to the mercy of the court."

Upon being polled, each juror answered that that was his verdict, except Arcade Butler, who answered:

"On my conscience that is not my verdict."

Defendants, through counsel, then moved that a mistrial be entered, but the court overruled the motion and ordered the jury to retire and reconsider the case, to which defendants objected, and reserved their bill. Thereafter the jury returned a verdict to the same effect as the first, to which they all agreed.

We find no error in the ruling which is the subject of complaint in this bill. It is competent for a trial court, under the circumstances stated, to send the jury back for further deliberation, and, if they subsequently reach a verdict, it is valid. 22 Enc. of Pl. & Pr. 937; 12 Cyc. 688.

[9, 10] 9. A deputy sheriff, examined as a witness in support of the motion for new trial, testified that he and other deputies were in charge of the jurors from the time that the first one was accepted, that, after two jurors had been accepted, they were eating a meal, in his presence, in a boarding house, and that, J. W. Russell, the father of the decedent being in the room, there occurred the following:

"He spoke to them [the jurors] and addressed them as gentlemen. * * * He said, 'Gentlemen, all I ask is a square deal.' * * * I said, 'Mr. Russell, leave these jurors, and you know better than to be speaking to them.' 'What I want is justice,' he replied. I then made him go out of the dining room and asked Mrs. Campbell [the landlady] not to let him in there."

It was also shown that Mr. Russell took an active part in the prosecution. Referring to another matter set up as ground for a new trial, the same witness gives the following testimony:

"Passing in front of the post office, Mr. G. J. Deville asked me if there was no harm to get his mail, and I told him I did not think there was, but I did not know, and he stepped on the inside of the post office and opened his box and got his mail, but he was not out of my sight at that time. Q. And you actually saw Mr. G. J. Deville get letters in the post office? A. Yes. Q. And you saw him read these letters? A. Yes. Q. And those letters were neither submitted to you nor to the presiding judge or to the defendants or their attorney? A. No."

The juror thus referred to testified (over the objection of defendant's counsel) that the letters received and read by him contained no reference to the case that he had sworn to try.

As J. W. Russell was the father of the young man who had been killed, and as his participation in the prosecution was active, and no doubt obvious, his statement to the two jurors could have conveyed to them no information that they did not already possess, or would not otherwise have acquired, and affords no ground for setting aside the verdict. As to the other matter, it was, no doubt, irregular and improper for the deputy sheriff to have allowed the juror to receive and read communications without being authorized to that effect by the judge. On the other hand, while a juror is not permitted to impeach his verdict, he may be called to sustain it by testimony in rebuttal of that attributing misconduct. It is said in the brief filed by defendants' counsel that the letters which were read by the juror would have furnished the best evidence as to their contents; but that objection was not made when the testimony was offered and comes too late at this time. As the matter stands, we see no reason to doubt the veracity of the juror, and his testimony as to the identity of the letters would have been no better than that which he gave as to their contents. The learned counsel for defendants make the following excerpt from a work of high authority, which we think applicable to the question presented, to wit:

"The presumption of law, when an outside communication is proved, is against the purity of the verdict; but this presumption may be overcome by positive evidence." Wharton's Criminal Law, vol. 3, p. 256, § 3318.

We may add that it does not appear from the record in this case that the jury had been impaneled at the time of the occurrence last above considered, nor does it appear that defendants were not informed of the occurrence at the time of the happening or prior to the bringing in of the verdict.

Finding no reversible error in the proceeding leading thereto, the verdict and sentence appealed from are affirmed.

## On Rehearing.

SOMMERVILLE, J. The application for a rehearing was based on the rulings of the court on matters embraced in two bills of exceptions reserved by defendants: First, to the remarks made by counsel to and concerning one another, in the presence of the jury; and, second, to the appeal made by the father of the deceased to two of the jurors who had been selected and sworn, while they were taking a meal at a boarding house in the town, prior to the completion of the jury.

Further consideration has been given these two matters, and we are now of the opinion that the former findings of the court in reference thereto were correct, and they will stand.

The colloquy between counsel for plaintiff and defendants in the presence of the jury had no reference to the accused; it referred to themselves, and to the district attorney. The remarks were made in a tilt between counsel, which was unfortunate, and should not have taken place. But, as the remarks did not concern accused in any manner, and could not have affected the case of the accused with the jury, they are insufficient to cause a reversal of the verdict. It is quite evident from the verdict acquitting two of the four accused, and finding the other two guilty of manslaughter, when they were all charged with murder, that no injury to the accused flowed from the remarks of counsel. Besides, the court charged the jury to pay no attention to the tilt between the counsel.

As to the appeal made by the father of the deceased to two of the jurors "to give him a square deal," while such an appeal should not have been made, or the jury communicated with by any outside person, yet, as stated in the opinion of the court, the jury was not impaneled at the time of the occurrence; and it was not made to appear that the defendants were not informed of what had taken place at the time of its happening, or prior to the bringing in of the verdict. Counsel should not have remained quietly by and allowed the jury to be completed, the evidence introduced, the trial closed, and take the chances of acquittal. After conviction the complaint was too late.

"The burden is on the defendant to show affirmatively that both he and his counsel were ignorant of the misconduct charged until after trial." Peterson v. Skjelver, 43 Neb. 663, 62 N. W. 43; State v. Craighead, 114 La. 84, 38 South. 28; State v. Dorsey, 40 La. Ann. 740, 5 South. 26; 12 Cyc. 718.

The former judgment is reinstated; and it is made the judgment of the court.