*815
 
 ODOM, Justice.
 

 Defendant was indicted for murdering his wife, Mary King. On the trial he was convicted of manslaughter and sentenced to hard labor for not less than 12 nor more than 20 years. He appealed.
 

 We find, in the record more than thirty bills of exception, some of which have been abandoned and others are not pressed for consideration. We find no merit in some of them which are stressed and shall not mention them. Others do present merit and disclose such manifest errors and prejudice to defendant that we find it necessary to set the conviction and sentence aside. The bills referred to are Nos. 3, 16, 21, 22, and 23. These are interrelated and we shall dispose of them all under one general heading.
 

 A general résumé of the facts, surroundings, and vital issues involved is necessary in order to bring out the points stressed by counsel for the defendant and to show the errors which are fatal to the conviction.
 

 Oscar King, the defendant, and Mary King, whom he is alleged to have murdered, were husband and wife. During the afternoon of June 19,1932, the two went to the lake shore at Lewisburg, where, as we understand, there is a bathing beach. Mary IJing was never seen alive again. On the following day, her body was found in the lake, having drifted against some piling. Pier hair was entangled in the piling and the action of the wind and waves caused her head to beat against them in such manner as could and may have caused bruises and lacerations of the skin on the face and head.
 

 Admittedly the defendant was the last person to see his wife alive. They were at the lake, alone. He gave a statement to the effect that he and his wife had gone to the lake to bathe and both went into the water; that he later went ashore to get a cigarette; and that on his return, his wife was missing, but that he found her bathing cap near the place where he left her, whereupon he left the lake, went to his home some ten miles away to notify his children and the neighbors and to procure aid in the search for her body.
 

 The district attorney in his opening statement informed the jury that he intended to prove that defendant had made the statement as indicated above, that the body had been found floating on the lake the following morning, that the body had on it at the time it was found certain severe bruises and contusions about the head and face, which wounds had been received by her before death; that deceased had not met death by drowning; that to show motive, he expected to prove that defendant’s married life with deceased had been unhappj due to his relations with another woman; and that “the foregoing proof would be sufficient to exclude any other theory than that defendant had killed his wife, either on the shore or in the water and left her body in the lake.”
 

 His statement made it perfectly clear that he intended to rest his case upon circumstantial evidence alone. The defendant therefore offered no affirmative defense and threw the entire burden upon the state to show circumstances consistent with the hypothesis that the accused was guilty and at the same time inconsistent with the hypothesis that he was innocent.
 

 
 *817
 
 As already stated, there were bruises and lacerations about the face and head of the deceased. Admittedly these could have been inflicted after death, caused by coming in contact with the piling against which the body had been carried by wind and wave.
 

 The state proposed to prove by medical experts that these wounds were inflicted before and not after death. Such proof would be consistent with the state’s theory that defendant had murdered his wife and then thrown her body into the water.
 

 This question, then, whether the wounds were inflicted before or after death, became a vital issue in the state’s chain of circumstantial evidence, and as we see it, the most vital issue. The state itself raised that issue. The defense did not. The burden then was upon the state to make good its affirmative allegation or theory that these wounds were inflicted before death, because if inflicted after death, the strongest' link in its chain was broken.
 

 The physicians who testified said that there is but one method by which it can be definitely determined whether wounds or lacerations found on the body of a dead person were inflicted before or after death and that is by taking specimens of tissues from the wounds, putting these on “slides,” and examining them microscopically. It was further stated that none but experts could do this and they must have the' benefit of a laboratory and microscopes. Medical men of ordinary training and skill cannot make these tests and cannot, even by the most careful and minute examination, determine this question.
 

 An autopsy, was conducted by the coroner and another physician on the morning the body was found. They opened the skull and lungs and examined the tissues^ but not microscopically. Just what conclusion they reached on the vital issue involved, from this particular examination, we are not informed. We must assume, however, that the district attorney had the benefit of their conclusions, whatever they were.
 

 Apparently he was not satisfied that he could produce satisfactory proof on the trial that the wounds on the body of deceased were inflicted before death, because sixteen days later the body was exhumed, at his request, for another autopsy. It is alleged by counsel for. the defense, and not denied by the district attorney, that he (the district attorney) requested that the second autopsy be conducted by Dr. Róeling, coroner of Orleans Parish, and his assistant, Dr. Ifauser, who is a pathologist.
 

 These physicians went from New Orleans to Covington and'there conducted the autopsy. Dr. Hauser, the pathologist, removed specimens of tissue from the wounded parts of the body to be prepared on slides for a microscopic examination. They returned New Orleans, where the slides were made and the tissue microscopically examined. All this was done at the instance and on behalf of the state. These physicians, Dr. Roeling and Dr. Hauser, are experts and at their laboratory in New Orleans had all' the equipment necessary to enable them to make the only test by which it could be definitely determined whether the wounds were post or ante mortem. They made the test and knew. No one else did. All that these experts did was done at the instance of the state. They were
 
 *819
 
 the state’s witnesses. What they knew was, the state’s evidence, and they were the only witnesses who could testify definitely touching the most vital point whether the wounds were inflicted before or after death.
 

 On the trial, the state did not call these witnesses to make out its case in chief, but was permitted by the court to use their testimony, one in rebuttal, and the court refused to permit counsel for the defense to impeach or contradict them. Counsel for defendant objected on the ground that where witnesses to essential facts for the state’s case in chief are available at all times during the trial, it is improper for it to withhold them for rebuttal and improper for the court to refuse to permit defendant to impeach or contradict .them. State v. Bellard, 132 La. 491, 61 So. 537; State v. Smith, 120 La. 530, 45 So. 415. To the overruling of counsel’s objections, they reserved bills of exception. ■
 

 The state finally secured the benefit of the testimony of Drs. Roeling and Hauser, but the ruling of the court permitting the use of their testimony by the state as it did was prejudicial to the rights of defendant and was reversible error. The defense was cut off entirely from impeaching or contradicting them. Under well-recognized rules of practice, the state in criminal prosecutions is permitted to call witnesses to rebut the testimony adduced by the accused. But as a matter of common fairness and justice, to the accused the state should “offer at once all the evidence that it has and not reserve Its real or main attack until after the defendant has closed.” State v. Pruett, 49 La. Ann. 283, 21 So. 842; State v. Spencer, 45 La. Ann. 1, 12 So. 135; State v. Bellard, and State v. Smith, supra; State v. Johnson, 141 La. 775, 75 So. 678.
 

 Unquestionably, the use of the testimony of Drs. Roeling and Hauser constituted the “main attack” of the state. Theirs was its chief, and we may say its sole, reliable evidence touching the question whether the wounds were ante or post mortem, and that was the vital .point in the case as shown by the fact that the state had the body exhumed sixteen days after its burial for the purpose of getting this evidence.
 

 The circumstances under which these physicians testified and the disadvantage under which counsel for defendant labored with reference thereto were as follows:
 

 The state, while the case was with it in chief, called two physicians, Dr. Young, the local coroner, and Dr. Geautreaux, who conducted the first autopsy, and who were present as spectators at the second autopsy. Each testified that the wounds were inflicted before death. It did not call the experts, Roeling and Hauser, who took the specimens, made the slides, and examined them microscopically. The defense called' two physicians, Dr. Heintz and Dr. Bullock, who were also present as spectators at the second autopsy. Each testified that the wounds were received after death.'
 

 It appears that the slides made by Drs. Roeling and Hauser were exhibited to Dr. Duval, a pathologist of New Orleans, who examined them and who was of the opinion that the wounds were received after death. Counsel for the defendant consulted Dr. Duval and called him as a witness. 1-Ie was asked if-he had examined the slides-made
 
 *821
 
 by Drs. Roeling and Hauser. Tbe state objected to his testimony on tbe ground tbat Dr. Dural, not haring made tbe slides or seen tbem made, could not identify tbem and tbat bis testimony as to tbeir identity would be purely hearsay. Tbe objection was sustained. Counsel for tbe defense then called tbe district attorney to the stand for tbe purpose of showing that Drs. Roeling and Hauser had made tbe slides at his request. The district attorney objected on the ground tbat Dr. Roeling was then present in court and that be, having made them, should be called to identify tbem. This objection was also sustained by tbe court. Tbe reason tbe defense did not want to call Dr. Roeling is patent. He bad made tbe test for tbe state and tbe defense did not want to be bound by bis testimony by calling him as its witness. But tbe defense, in order to get the benefit of Dr. Duval’s testimony, bad to identify the slides, and Dr. Roeling was tbe only one who could do so. Tbe defense therefore was forced to call him. He was called and the defense asked tbat bis testimony be limited to tbe identification alone. This request was refused on tbe ground tbat article 376 of tbe Code of Criminal Procedure provides tbat. “When a witness has been intentionally sworn and has testified to any single fact in bis examination in chief, he may be cross-examined upon the whole case.”
 

 Tbe defense questioned tbe witness only as to the identity of the slides. Tbe state then proceeded, by cross-examination, to elicit from tbe witness all the facts in connection with the autopsy made by him and Dr. Hauser, tbe making of tbe slides and tbeir examination, and finally the opinion tbat the wounds were inflicted before death. In other words, tbe state drew out by leading questions (so we are informed) put to tbe witness tbe very facts and tbe opinion upon which it relied, at least in a large measure, for a conviction and this from a witness who above all others, except one, was in a position to know and who no doubt did know. This cross-examination was permitted over defendant’s objection. The defense was not permitted to impeach or contradict this witness on tbe ground tbat it bad called him.
 

 After tbe defendant closed bis case, tbe state recalled Dr. Roeling in rebuttal and sought to have him say again that tbe wounds were inflicted before death. Counsel for defendant objected to this testimony on tbe ground that tbe testimony of tbe witness went solely to prove the original allegations and material point stressed by the state tbat defendant bad committed murder and that such testimony should have been offered in chief and not in rebuttal. This objection was properly sustained by tbe court.
 

 Tbe state then called Dr. Hauser, tbe pathologist, who was present at and assisted in conducting tbe second autopsy, who had taken tbe specimens and made tbe slides with Dr. Roeling and examined tbem. He was asked to give bis opinion as to tbe time tbe wounds were received. This testimony was offered in rebuttal of tbat given by tbe physicians called by the defense. Counsel for the defendant urged the same objection to bis testimony as was urged to tbat of Dr. Roeling when called in rebuttal. Tbe court reversed its previous ruling and allowed Dr. Hauser to testify.
 

 
 *823
 
 Counsel for defendant asked to be permitted to rebut tbe testimony of Dr. Hauser. But tbe rule is that tbe defense cannot introduce rebutting testimony to tbe rebuttal testimony introduced by tbe state. Surrebuttal testimony is not permissible as a matter of right, although it is sometimes permitted within the sound discretion of the court. State v. Spencer, supra; State v. Woods, 31 La. Ann. 267; State v. Gonsoulin, 38 La. Ann. 459; State v. Lyons, 44 La. Ann. 106, 107, 10 So. 409.
 

 The rule governing the practice in criminal cases is that the state is permitted always to disprove, if it can, by way of rebuttal, the testimony adduced by the defense. The district attorney cannot always anticipate the special defenses which a defendant may set up. He must necessarily await their development on the trial and repel them if he can.
 

 But there is another rule equally sound and well recognized, which is that the purpose of rebuttal testimony offered by the state is to disprove the theory or defense set up by the defendant and not to prove or establish its case. Hence it follows that the state is not permitted to deliberately withhold for rebuttal the witnesses upon whom it relies chiefly to support its theory of guilt.
 

 In the case at bar, the defendant set up no special defenses. On the contrary,..the district attorney announced that as part of state’s chain of circumstantial evidence he proposed to show affirmatively by the testimony of expert witnesses that the wounds about the head and face of the deceased were received before death; the theory being that defendant had murdered his wife and thrown her body into the lake. The experts and the^ only ones by whom this affirmative fact could be proved were Drs. Roeling and Hauser. These witnesses, although present and available while the case was with the state in chief, were not brought forward but were held for rebuttal witnesses. This seems to have been done deliberately, for unquestionably the district attorney knew all the time what their testimony would be, and its materiality in the chain of circumstantial evidence.
 

 The circumstances under'which'these experts were permitted to testify made it impossible under the strict rules of practice (which the district attorney repeatedly and strenuously invoked) for the defense to attack or in any wise disprove their testimony. Counsel were not permitted to cross-examine Dr. Roeling.
 

 The rule is that a trial judge may permit the introduction of any testimony the state has prior to the submission of the case in order to promote the ends of justice. But after the defense closes, if the state offers, to introduce evidence not strictly rebuttal in its nature, it should be allowed as evidence in chief and the defendant should be given the opportunity to rebut it. Herein lies the fault we find with the ruling of the trial court. The testimony of the experts was not, under the peculiar circumstances, of this case, rebuttal in its nature. It was primary evidence which should have been offered in chief.
 

 Having been omitted by the state, whether by slip or design, the court had the right to permit its introduction, even after the defense closed, if in its opinion it was neees
 
 *825
 
 sary to promote the administration of justice. But he should have reopened the case for its introduction or let it he introduced as evidence in chief subject to rebuttal.
 

 The rulings of the court were highly prejudicial to defendant’s rights.
 

 . For the reasons assigned, the verdict and sentence ¡are set aside and the case is remanded for retrial.
 

 BBUNOT, j., dissents.
 

 Judges per curianas dispose of the bills on which the opinion is based.