408 So.2d 1358 (1982)
STATE of Louisiana
v.
Carl E. PERRY and Bettye R. Perry.
No. 81-KA-1407.
Supreme Court of Louisiana.
January 26, 1982.
Rehearing Denied February 19, 1982.[*]
*1359 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Bob Hester, Asst. Dist. Attys., for plaintiff-appellee.
A. Edward Hardin, and Frank Middleton, III, of Middleton & Hardin, Baton Rouge, for defendant-appellant.
HALL, Justice Ad Hoc.[**]
In separate bills of information, Carl Perry was charged with two counts of contributing to the delinquency of juveniles, LSA-R.S. 14:92[1], and two counts of simple criminal damage to property, LSA-R.S. 14:56[2].
*1360 Also in separate bills of information, Bettye Perry was charged with two counts of contributing to the delinquency of juveniles and three counts of simple criminal damage to property. Upon motion of the defendants, all charges against both defendants were consolidated for trial. After trial before a six-man jury, the defendants were convicted on all counts with which they were charged. Both defendants now appeal their convictions, presenting four assignments of error. The defendants specifically abandoned assignments of error Nos. 1 and 2, leaving only two assignments for our review.
The charges against the defendants stem from two incidents occurring in mid-March 1980 in the defendants' suburban East Baton Rouge Parish neighborhood. Sometime between the hours of 8:00 p. m. on March 11 and 3:00 a. m. on March 12, 1980, the residences of Mary Morgan and Delores and Louis Thomas were vandalized. Both houses were "egged"; the term "nigger" was painted with blue spray paint on at least one window of each house; the front windows, screens, and shutters of both houses were defaced with blue spray paint. In addition to this damage, all four tires on an automobile belonging to the Thomases were slashed.
Mrs. Morgan discovered the damage when she returned home from work at about 3:00 a. m. on March 12 and called Mrs. Thomas to advise her of the damage that was done to her house. Mrs. Morgan also telephoned the police to file a complaint.
Approximately a week later, on March 18, 1980, the residence of Mrs. Debra Scott was vandalized in a similar manner. Mrs. Scott's house was "egged" and was defaced with gold or silver spray paint.
An anonymous telephone call to the East Baton Rouge Parish Sheriff's Department led investigators to certain juveniles who, upon questioning by the investigators, admitted their complicity in the acts of vandalism. Information provided by these juveniles implicated both defendants who were subsequently arrested and charged.
Assignment of Error No. 3
By this assignment of error, the defendants contend that the trial court erred in allowing the state on rebuttal to present the testimony of the mother of one of the juveniles involved. The witness testified, over defense objections, that defendant Bettye Perry telephoned her and requested that the witness get her son to say that defendant Carl Perry did not have any influence on the juvenile involving the acts of vandalism done to the homes. Defendants argue that this testimony was inadmissible because (1) the state did not notify the defendants pursuant to LSA-C.Cr.P. Art. 768[3] of its intention to introduce an inculpatory statement into evidence; and (2) that the testimony elicited by the state exceeded the scope of permissible rebuttal testimony because it introduced an entirely new issue after the defense had rested.
Defendants argue that this rebuttal evidence should have been part of the state's case in chief and that the trial court committed reversible error in admitting this evidence on rebuttal, particularly in view of the state's failure to notify the defendants of its intentions pursuant to Article 768.
During the state's case in chief, the prosecution elicited testimony from each of the juveniles who had admitted their participation in one or both of the incidents of vandalism. It was established through the testimony of these witnesses that defendant *1361 Bettye Perry asked one or two of the juveniles to gather a few other boys together and to come to her house on the afternoon of March 11 or 12. When the juveniles arrived late that afternoon, Mrs. Perry, with Mr. Perry present, told the children that something had to be done about the black families who had moved into the neighborhood or their parents would be forced to move away. She told the juveniles to return to her house after dark that evening. When the boys returned to the Perry house after dark, Mrs. Perry gave each of them some eggs to throw at the houses. Mr. Perry gave one of the boys some blue spray paint. The boys, aided by Mrs. Perry, proceeded to the Morgan and Thomas residences, threw the eggs that Bettye Perry had given them at the house and helped her deface the houses with blue spray paint. After this had been done, most of the juveniles left. One juvenile, however, remained and at the suggestion of Carl Perry and with his help, proceeded to the Thomas residence where he and Carl Perry slashed the tires on the Thomas vehicle.
The juveniles involved in the March 18 incident testified that Mrs. Perry once again provided them with eggs to throw at one of the neighborhood houses and actively participated with the children in vandalizing the residence of Debra Scott. Carl Perry was not involved in this incident.
During the case for the defense, both defendants took the stand and denied that they had participated in, suggested, or encouraged the acts of vandalism. Both defendants testified that on the evening of March 12, they went jogging around the neighborhood and then stopped briefly by a neighbor's house to visit. They did not return to their home until 8:30 to 9:00 p. m., somewhat after the time the juveniles testified the acts of vandalism occurred. The neighbors which the Perrys visited also testified, corroborating the testimony of the defendants.
Regarding the March 18 incident, defendant, Carl Perry, established that he was at a work-related meeting on the evening of the 18th and did not return home until after 9:00 p. m. Mrs. Perry testified that she took her children out to dinner and then took them to a store to look at toys. She testified that she did not return home until approximately 8:30 p. m., again, after the time the juveniles testified the acts of vandalism occurred.
To counter this alibi defense, the prosecution in rebuttal called the mother of one of the juveniles to the stand. During her testimony, the complained of inculpatory statement was admitted into evidence. Defendants contend that this court's decision in State v. Turner, 337 So.2d 455 (La.1976), compels the conclusion that the trial court committed reversible error in allowing the state to introduce defendants' inculpatory statements in rebuttal.
In Turner, this court noted that "rebutting evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party." See State v. Monroe, 205 La. 285, 17 So.2d 331 (1944). It was also noted that prior cases demonstrate two types of prejudice which may be sustained by a defendant through the admission in the state's rebuttal of evidence which should more properly form part of the state's case in chief:
"(1) Since in Louisiana `the defendant is without right to rebut the prosecutor's rebuttal', La.R.S. 15:282, the defendant may be prejudiced by the denial to him of an opportunity to defend against new issues; and
"(2) The production of strong prosecution evidence in chief after the defendant rests his case may unfairly emphasize the prosecution's `rebuttal' evidence, contrary to the legislatively intended order of proof, La.C.Cr.P. art. 765(5), designed from ancient experience to assure fairness in our criminal trials.
"The first type of prejudice may often be cured. If the trial court exercises its discretion to permit the state to offer in rebuttal material evidence inadvertently *1362 omitted from its case in chief, the prejudice thereby caused may normally be avoided by the trial court's permitting the defendant to introduce additional evidence to defend against the new issue thereby raised. La.C.Cr.P. art. 765(5). See State v. Scott, 320 So.2d 538 (La. 1975). Further, the failure of the defendant to request such reopening of the evidence in order to avoid such prejudice may under some circumstances be presumed to indicate that prejudice of this type is not presented for review. State v. Johnson, 141 La. 775, 783, 75 So. 678 (1917); State v. Smith, 120 La. 530, 532, 45 So. 415 (1908).
"The second type of prejudice is sometimes incurable. Whether reversible error has resulted may depend upon the nature of the new evidence offered by the state for the first time in improper rebuttal. Improper rebuttal with regard to a peripheral issue may be regarded as harmless. State v. Major, 318 So.2d 19 (La.1975). To the contrary, however, if the evidence injects an entirely new issue which should have been an important part of the state's case in chief, State v. Campbell, 263 La. 1058, 270 So.2d 506 (1972), or if it unfairly places extreme weight on a part of the state's evidence which should have been introduced in the case in chief, cf. State v. Davis, 246 La. 383, 164 So.2d 589 (1964)."
After reviewing the entirety of the evidence presented in this case, we conclude that the defendants here have suffered neither type of prejudice. The admission into evidence of the complained of inculpatory statement did not inject a new issue into the trial but was an attempt by the state to directly controvert the alibi evidence offered by the defense. See State v. Hills, 354 So.2d 186 (La.1977). Additionally, the rebuttal testimony was offered to controvert testimony by both defendants that they had not participated in the acts of vandalism. The rebuttal testimony did not add a great deal to the state's case against the defendants, considering the strong evidence of guilt presented by the state through the testimony of the juveniles in the state's case in chief.
As the court noted in State v. Hills, supra:
"Control of evidence presented by the State on rebuttal is within the sound discretion of the trial judge whose ruling `will not be disturbed except in extreme cases, as where the evidence has been kept back deliberately and for the purpose of deceiving and obtaining an undue advantage of defendant.' State v. Turner, supra, at 459."
The state did not obtain an undue advantage of the defendants in this case and we find that the trial court did not abuse its discretion in allowing the state to elicit the complained of testimony on rebuttal.
Defendants also complain that the inculpatory statement should not have been admitted into evidence because the state failed to notify the defendants of its intention to use the inculpatory statement in evidence as required by LSA-C.Cr.P. Art. 768. Defendants are correct in this regard. It is not disputed that the statement complained of was an inculpatory statement and that the state failed to advise the defendants of its intention to introduce the statement prior to trial. While we agree with the defendants that the trial court erred in admitting the inculpatory statement into evidence, we conclude that the error was harmless. The evidence pointing to the guilt of the defendants was overwhelming. Each of the juvenile witnesses called by the state testified that both defendants had encouraged and participated in the acts of vandalism. The contrary testimony of the defendants, being self-serving, is not persuasive. Additionally, the alibi evidence introduced by the defendants was extremely weak. Under these circumstances, we are convinced that the admission of the inculpatory statement, only obliquely inculpatory and of little probative value, worked no substantial prejudice on *1363 the rights of the accused. Therefore, we conclude that the trial court's error was harmless. State v. Smith, 401 So.2d 1179 (La.1981) and State v. Gautreaux, 377 So.2d 289 (La.1979).
This assignment of error lacks merit.
Assignment of Error No. 4
By this assignment of error, the defendants contend that the trial court erred in its instruction to the jury regarding the definition of "owner" as used in LSA-R.S. 14:56, the statute defining the crime of simple criminal damage to property.
LSA-R.S. 14:56 provides in pertinent part:
"Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion...." (Emphasis supplied)
The trial court in its general charge to the jury gave the following instruction which the defendants complain of on appeal:
"Without the consent of the owner, in the context of this statute, means without permission or approval of the one who has the right of residency, use or occupancy."
Defendants contend that this instruction was erroneous and that "owner" should be defined more restrictively. Specifically, it is the contention of the defendants that the term "owner" means the person who has the right of direct, immediate, and exclusive authority over a thing; the "owner" is that person who may use, enjoy, and dispose of a thing under the conditions established by law. See LSA-C.C. Art. 477.
During the state's case in chief the residents of each of the three homes that were vandalized testified that they did not consent to the damaging of their property. The defendants established that none of the residents who testified had record title to the houses which had been vandalized. Rather, the victims of these acts of vandalism were tenants or lessees merely possessing the property that was vandalized.
It is axiomatic that the state must prove every element of the crime with which the defendant in a criminal case is charged. An essential element of the crime of simple criminal damage to property is that the damage was done without the consent of the owner. Contrary to the argument of the defendants, "owner" should be defined in accordance with the common meaning and understanding of the term, not in accordance with the technical definition of ownership of immovable property. The meaning of the term is to be gathered from the connection in which it is used and from the subject matter to which it is applied. See LSA-R.S. 14:3. The term "owner" has been defined in many ways. See Black's Law Dictionary (4th Edition). "Owner" may be defined as the person in possession of a thing or the one with dominion control and management of a thing at the time in question. "Owner" is not always defined as the person who holds the record title to property.
In this case, proof that damage to a house was inflicted without the consent of the person living in the house is sufficient to establish lack of consent of the owner. Additionally, we note that lack of consent of an owner to malicious vandalism of an owner's property can often be inferred circumstantially from the evidence presented, and such is the only reasonable inference under the evidence presented in this case.
Under the circumstances presented by this case, we think the trial court's definition of "owner" as including persons with the right of use, residency or occupancy was not erroneous. The instruction to the jury fairly dealt with the issue of proof of lack of consent. It is well established that the ruling of a trial court on an objection to a portion of his charge to a jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be *1364 erroneous and prejudicial. State v. Dardar, 353 So.2d 713 (La.1977); State v. George, 346 So.2d 694 (La.1977); State v. Walker, 204 La. 523, 15 So.2d 874 (1943); State v. Davis, 154 La. 295, 97 So. 449 (1923). Under the facts presented in this case, we do not find the disputed portion of the charge to the jury to be erroneous or prejudicial. This assignment of error lacks merit.
Decree
For the reasons assigned the convictions and sentences appealed from are affirmed.
LEMMON, J., concurs.
NOTES
[*] Dennis, J., would grant a rehearing.
[**] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] LSA-R.S. 14:92 reads in pertinent part:

"A. Contributing to the delinquency of juveniles is the intentional enticing, aiding or permitting, by anyone over the age of seventeen, of any child under the age of seventeen, and no exception shall be made for a child who may be emancipated by marriage or otherwise, to: ...
"(9) Violate any law of the state or ordinance of any parish or village, or town or city of the state; ...
"B. Lack of knowledge of the juvenile's age shall not be a defense.
"C. Whoever commits the crime of contributing to the delinquency of a juvenile shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both...."
[2] LSA-R.S. 14:56 states:

"A. Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
"B. Whoever commits the crime of simple criminal damage to property, where the damage is less than five hundred dollars, shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
"Where the damage amounts to five hundred dollars but less than fifty thousand dollars, the offender shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both.
"Where the damage amounts to fifty thousand dollars or more, the offender shall be fined not more than ten thousand dollars, or imprisoned with or without hard labor for not less than one nor more than ten years, or both."
In this case, both defendants were charged with simple criminal damage to property where the damage is less than five hundred dollars.
[3] LSA-C.Cr.P. Art. 768 provides:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.